Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
Cody Alexander Bolce, Esq. (S.B. #322725)
**SCOTT COLE & ASSOCIATES, APC**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: scole@scalaw.com
Email: lvannote@scalaw.com
Email: cbolce@scalaw.com
Web: www.scalaw.com

Attorneys for Representative Plaintiffs
and the Plaintiff Classes

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

KEVIN RIORDAN, ASHLEY LAURENT, JEREMY BOBO, NAGUI SORIAL, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs.

WESTERN DIGITAL CORPORATION,

Defendant.

Case No.

**CLASS ACTION**

**PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF FOR:**

1. **VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**

2. **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

3. **NEGLIGENCE/FAILURE TO WARN**

4. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

5. **UNFAIR BUSINESS PRACTICES (CALIFORNIA "UCL")**

6. **UNJUST ENRICHMENT**

   **JURY TRIAL DEMANDED**

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Representative Plaintiffs allege as follows:

**<u>INTRODUCTION</u>**

1.      This is a class action brought by Representative Plaintiffs on behalf of themselves as well as on behalf of a National Class and a California Subclass of all entities/persons whose personal, commercial and/or proprietary information (hereinafter the "Stored Data") was accessed and/or deleted, starting as early as June 23, 2021, by unauthorized persons in the compromised device event announced by Defendant Western Digital Corporation ("Defendant") on or about June 23, 2021 (hereinafter the "Data Wipe").[1]

2.      Representative Plaintiffs Kevin Riordan, Ashley Laurent, Jeremy Bobo and Nagui Sorial ("Representative Plaintiffs" or "Plaintiffs") bring this class action against Defendant for its failure to properly secure and safeguard Representative Plaintiffs' and Class Members' personal, commercial and/or proprietary information stored within Defendant's devices and/or to ensure that Representative Plaintiffs and Class Members purchased devices that operated in a secure manner as were appropriate for use as secure storage devices.

3.      Because of Defendant's negligent and fraudulent acts and omissions, Defendant's customers, especially those who had configured Defendant's external hard drives to be remotely accessible, have since (starting on or about June 2020) discovered that the data stored thereon had been erased.

4.      According to a June 24, 2021 statement by Defendant, "Western Digital has determined that some My Book Live and My Book Live Duo devices *are being compromised through exploitation of a remote command execution vulnerability*. In some cases, the attackers have triggered a factory reset that appears to erase all data on the device." While acknowledging that "our customers' data is very important," Defendant concedes that it "[does] not yet understand why the attacker triggered the factory reset."

---

[1]  https://www.bleepingcomputer.com/news/security/wd-my-book-nas-devices-are-being-remotely-wiped-clean-worldwide/ (last accessed July 20, 2021)

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

5.      Regardless of Defendant's alleged efforts to investigate after the Data Wipe, Representative Plaintiffs and Class Members have already suffered damages, including but not limited to years-worth of lost sensitive, intimate, and valuable personal, commercial and/or proprietary information (hereinafter the "Stored Data"). The nature of this data ranges from important financial information to priceless personal items such as family photos of vacations, childbirths, graduations and holidays. Indeed, many Class Members stored massive amounts of data on the Covered Products, all of which has since been deleted. What's more, in many instances, Class Members kept little or no inventory of what information was stored on their Covered Products, meaning that the full extent of their loss may never be fully known.

6.      Defendant is a corporation that touts itself as developing, manufacturing, and providing data storage devices and claims to address the evolving needs of information technology.[2] Therefore, at all relevant times, Defendant knew or should have known that its customers would use Defendant's storage devices to store personal, commercial and/or proprietary information and that Defendant's products, especially those at issue here which were connected to the Internet, were expected to ensure the security of customers' data. Indeed, Defendant marketed these products at all times for precisely those purposes.

7.      Representative Plaintiffs and Class Members purchased one or more of the following devices (hereinafter the "Covered Products") during the class period:

- My Book Live SKU: WDBACG0030HCH
- My Book Live SKU: WDBACG0020HCH
- My Book Live SKU: WDBACG0010HCH
- My Book Live Duo SKU: WDBVHT0080JCH
- My Book Live Duo SKU: WDBVHT0060JCH
- My Book Live Duo SKU: WDBVHT0040JCH

8.      Each of these devices had multiple security flaws present in their software from their creation that allowed remote hackers to remove customer data therefrom and perform a "factory reset" of the devices without the customers' login information. Representative Plaintiffs and Class Members purchased these devices in reliance on Defendant's representation that they were secure and that Defendant was committed to safely preserving their data.

---

[2]   https://www.westerndigital.com/company (last accessed July 20, 2021)

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

9.     As such, Defendant owed a duty of care to Representative Plaintiffs and Class Members. Specifically, Defendant owed a duty to design and provide products that would not jeopardize the Stored Data of Representative Plaintiffs and Class Members. Defendant breached this duty by allowing known issues and/or vulnerabilities with the products to remain without any remedy or notification—issues and abilities that were ultimately used by cyber-criminals to access and/or delete massive volumes of Class Member data. At present, according to Defendant, the only way to avoid further harm to the Covered Products and any data potentially remaining thereon is to disconnect the Covered Products from the Internet—either physically or by configuring a router or firewall to prevent access from outside the user's home network.

10.     Defendant's negligent and/or careless acts and omissions resulted in the access and/or erasure by unauthorized third parties of Representative Plaintiffs' and Class Members' Stored Data.

11.     Defendant's negligence ultimately resulted in Representative Plaintiffs and Class Members losing some or all of their Stored Data that they maintained on Defendant's Covered Products. The erasure of this data occurred without consent or any action taken by the Representative Plaintiffs and/or Class Members.

12.     Representative Plaintiffs bring this action on behalf of all persons whose Stored Data was compromised as a result of Defendant's failure to: (i) design the Covered Products (including designing and providing updated features, software and/or patches) in a manner consistent with the Covered Products' expected and intended use, and/or (ii) warn Representative Plaintiffs and Class Members of flaws, defects and over vulnerabilities in these defective products. Defendant's conduct amounts to negligence as well as reckless and knowing conduct and violates federal and state statutes.

13.     Representative Plaintiffs and Class Members have suffered injury and economic loss as a result of Defendant's conduct. These injuries include: the deletion, compromise, publication and/or theft of their Stored Data, out-of-pocket expenses associated with the prevention, detection, and recovery from deletion of their Stored Data, lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1   the actual and future consequences of the Data Wipe, including but not limited to efforts spent

2   researching how to prevent, detect, contest and recover the loss of data, and future costs in terms

3   of time, effort and money that will be expended to prevent, detect, contest, and repair the impact

4   of the Stored Data deleted as a result of the Data Wipe for the remainder of the lives of

5   Representative Plaintiffs and Class Members.

6          14.    Defendant disregarded the rights of Representative Plaintiffs and Class Members

7   by intentionally, willfully, recklessly or negligently designing the Covered Products, by failing to

8   issue a recall thereof, by failing to warn Representative Plaintiffs and Class Members of

9   vulnerabilities therein, and, generally, by otherwise failing take and implement adequate and

10  reasonable measures to ensure that Representative Plaintiffs' and Class Members' Stored Data was

11  safeguarded. As a result, the Stored Data of Representative Plaintiffs and Class Members was

12  compromised through disclosure to an unknown and unauthorized third party—an undoubtedly

13  nefarious third party that likely seeks to profit off this disclosure by defrauding Representative

14  Plaintiffs and Class Members in the future. Representative Plaintiffs and Class Members have a

15  continuing interest in ensuring that their information is and remains safe, and they are, thus, entitled

16  to injunctive and other equitable relief.

17

18                              **JURISDICTION AND VENUE**

19         15.    Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction)

20  and/or 28 U.S.C. §1331 (controversy arising under United States law). Specifically, this Court has

21  subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is

22  a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive

23  of interest and costs, there are more than 100 members in the proposed class, and at least one other

24  Class Member is a citizen of a state different from Defendant as Defendant sells and/or has sold

25  Covered Products to Class Members who are citizens of other states.

26         16.    Supplemental jurisdiction to adjudicate issues pertaining to California state law is

27  proper in this Court under 28 U.S.C. §1367.

28

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

17.     Defendant maintains headquarters in California, routinely conducts business in California, has sufficient minimum contacts in California and has intentionally availed itself of this jurisdiction by marketing and selling products, and by accepting and processing payments for those products and services within California.

18.     Venue is proper in this Court under 28 U.S.C. § 1391 because the events that gave rise to Representative Plaintiffs' and many Class Members' claims took place within the Northern District of California, and Defendant does business in and is headquartered in this Judicial District.

## PLAINTIFFS

**Plaintiff Kevin Riordan**

19.     Representative Plaintiff Kevin Riordan ("Riordan") is an adult individual and, at all relevant times herein, a resident of the State of Tennessee. Riordan is a victim of the Data Wipe.

20.     Riordan purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

21.     At all times herein relevant, Riordan is and was a member of the National class.

22.     Riordan purchased the Covered Product(s) for the purpose of storing personal and financial data thereon. During the class period, Riordan used the particular Covered Product(s) for its/their advertised, expected and intended purpose(s).

23.     As a result of the Data Wipe, detailed here, Riordan's Stored Data was deleted from his particular Covered Product(s). Riordan has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

24.     Defendant did not inform Riordan of the vulnerability that led to the Data Wipe and gave Riordan no advanced warning that the deletion of his files was a legitimate threat. At all times prior to the Data Wipe, Defendant told Riordan his data was safe and that the Covered Product(s) he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1

**Plaintiff Ashley Laurent**

2       25.    Representative Plaintiff Ashley Laurent ("Laurent") is an adult individual and, at

3 all relevant times herein, resident of the State of Minnesota. Laurent is a victim of the Data Wipe.

4       26.    Laurent purchased, used and lost data of personal and economic value due to the

5 negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

6       27.    At all times herein relevant, Laurent is and was a member of the National class.

7       28.    Laurent purchased the Covered Product(s) for the purpose of storing personal and

8 financial data thereon. During the class period, Laurent used the particular Covered Product(s) for

9 its/their advertised, expected and intended purpose(s).

10       29.    As a result of the Data Wipe, detailed here, Laurent's Stored Data was deleted from

11 his particular Covered Product(s). Laurent's has been unable to recover the data deleted, has spent

12 time investigating the cause of the deletion and opportunities for recovery thereof, and has

13 otherwise been harmed both personally and economically as a result.

14       30.    Defendant did not inform Laurent of the vulnerability that led to the Data Wipe and

15 gave Laurent no advanced warning that the deletion of his files was a legitimate threat. At all times

16 prior to the Data Wipe, Defendant told Laurent his data was safe and that the Covered Product(s)

17 he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

18

19

**Plaintiff Jeremy Bobo**

20       31.    Representative Plaintiff Jeremy Bobo ("Bobo") is an adult individual and, at all

21 relevant times herein, resident of the State of California. Bobo is a victim of the Data Wipe.

22       32.    Bobo purchased, used and lost data of personal and economic value due to the

23 negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

24       33.    At all times herein relevant, Bobo is and was a member of the National class and

25 California Subclass.

26       34.    Bobo purchased the Covered Product(s) for the purpose of storing personal and

27 financial data thereon. During the class period, Bobo used the particular Covered Product(s) for

28 its/their advertised, expected and intended purpose(s).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

35.     As a result of the Data Wipe, detailed here, Bobo's Stored Data was deleted from his particular Covered Product(s). Bobo has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

36.     Defendant did not inform Bobo of the vulnerability that led to the Data Wipe and gave Bobo no advanced warning that the deletion of his files was a legitimate threat. At all times prior to the Data Wipe, Defendant told Bobo his data was safe and that the Covered Product(s) he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

**Plaintiff Nagui Sorial**

37.     Representative Plaintiff Nagui Sorial ("Sorial") is an adult individual and, at all relevant times herein, resident of the State of California Sorial is a victim of the Data Wipe.

38.     Sorial purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

39.     At all times herein relevant, Sorial is and was a member of the National class and California Subclass.

40.     Sorial purchased the Covered Product(s) for the purpose of storing personal and financial data thereon. During the class period, Sorial used the particular Covered Product(s) for its/their advertised, expected and intended purpose(s).

41.     As a result of the Data Wipe, detailed here, Sorial's Stored Data was deleted from his particular Covered Product(s). Sorial has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

42.     Defendant did not inform Sorial of the vulnerability that led to the Data Wipe and gave Sorial no advanced warning that the deletion of his files was a legitimate threat. At all times prior to the Data Wipe, Defendant told Sorial his data was safe and that the Covered Product(s) he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

**DEFENDANT**

43.     Defendant Western Digital Corporation is and was a business entity, formed and incorporated in the State of Delaware, with headquarters located at 5601 Great Oaks Pkwy, San Jose, California 95119.[3]

44.     Defendant's failure, unwillingness and/or inability to adequately design, market, sell and provide reasonable updated information and warnings regarding the Covered Products was not for lack of resources. Defendant is currently ranked #182 on the Fortune 500 Revenue Rank. For the fiscal year ending September 2020, Defendant reported annual revenue of $16,740,000,000.[4]

45.     Additionally, the scope and sophistication of Defendant's operation is further reflected in the large salaries of its executives. In fiscal year ending in September 2020, Defendant paid its Chief Executive Officer $36 million in annual compensation.[5] Other executives have also taken home eight figure annual compensation packages and several other employees have received compensation in the high seven figures.[6]

46.     Despite its impressive profitability and lavish executive compensation, Defendant pitches itself as an organizations committed to creating a better world and enabling new technologies. On its website, Defendant claims to be "a leading global data storage brand that empowers you to create, experience and preserve your digital content across a range of devices." Defendant purports to be more than merely a technology company—providing "innovation at the boundaries of technology." Defendant's failure to design and maintain Covered Products that will safeguard Representative Plaintiffs' and Class Members' highly sensitive data, despite having adequate resources to do so, belies this high-minded sentiment.

---

[3] https://www.westerndigital.com/office-locations (last accessed July 20, 2021)

[4] https://investor.wdc.com/news-releases/news-release-details/western-digital-reports-fiscal-third-quarter-2021-financial (last accessed July 20, 2021)

[5] https://www.execpay.org/news/western-digital-corp-2020-compensation-969 (last accessed July 20, 2021)

[6] Ibid. (last accessed July 20, 2021)

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

47.    In addition to violating its purported commitment to its customers, Defendant's failure to design, market and sell Covered Products that are functional and adequate for their expected, advertised and intended use also breaches duties it owes Representative Plaintiffs and Class Members under statutory and common law. Representative Plaintiffs and Class Members placed years of highly sensitive and oft-irreplaceable data on the hard drives of the Covered Products under the implied condition that the Covered Products would keep such information intact, private and secure. Accordingly, Defendant also has an implied duty to design functional products adequate for their expected, advertised and intended use that exists independent of any statute.

48.    Defendant violated its duty to Representative Plaintiffs and Class Members through its failure to protect against a foreseeable cyberattack–a completely unsurprising fact given that Defendant's devices involved in the attack have a common inherent flaw. By these omissions and/or affirmative conduct, Defendant failed to satisfy its own "mission" of "preserv(ing) your digital content across a range of devices."

49.    The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiffs. Representative Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## CLASS ACTION ALLEGATIONS

50.    Representative Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following classes/subclass(es) (collectively, the "Classes"):

National Class:
"All individuals within the United States of America who, during the applicable class period, purchased and/or used one or more of the following Western Digital Corporation products and suffered resultant injury and/or economic harm:

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

- My Book Live SKU: WDBACG0030HCH
- My Book Live SKU: WDBACG0020HCH
- My Book Live SKU: WDBACG0010HCH
- My Book Live Duo SKU: WDBVHT0080JCH
- My Book Live Duo SKU: WDBVHT0060JCH
- My Book Live Duo SKU: WDBVHT0040JCH"

<u>California Subclass:</u>

"All individuals within the State of California who, during the applicable class period, purchased and/or used one or more of the following Western Digital Corporation products and suffered resultant injury and/or economic harm:

- My Book Live SKU: WDBACG0030HCH
- My Book Live SKU: WDBACG0020HCH
- My Book Live SKU: WDBACG0010HCH
- My Book Live Duo SKU: WDBVHT0080JCH
- My Book Live Duo SKU: WDBVHT0060JCH
- My Book Live Duo SKU: WDBVHT0040JCH"

51. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

52. Also, in the alternative, Representative Plaintiffs request leave to add Subclasses as necessary based on the types of Stored Data that were compromised.

53. Representative Plaintiffs reserve the right to amend the above definitions or to propose subclasses in subsequent pleadings and/or motions for class certification.

54. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Classes is easily ascertainable.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

a.  Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is in the hundreds of thousands of individuals. Membership in the Classes will be determined by analysis of Defendant's records.

b.  Commonality: The Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1)  Whether Defendant breached a legal duty to Representative Plaintiffs and Class Members in the designing, marketing, selling, maintaining and/or providing of updated information regarding the Covered Products;

2)  Whether Defendant knew or should have known of the susceptibility of the Covered Products to a Data Wipe, and when it first knew or had reason to know thereof;

3)  Whether the Covered Products' design was reasonable, adequate and appropriate vis-a-vis the expected and intended usage of those products, in light of the standards recommended by industry experts;

4)  Whether Defendant designed the Covered Products and/or failed to warn Representative Plaintiffs and Class Members in a manner below industry standards, and whether these failures proximately led to the Data Wipe and/or loss of Stored Data;

5)  Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to product design;

6)  Whether Defendant adequately, promptly and accurately informed Representative Plaintiffs and Class Members that their Stored Data was subject to compromise and/or deletion;

7)  How and when Defendant actually learned of the Data Wipe;

8)  Whether Defendant failed to adequately respond to the Data Wipe, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without

unreasonable delay, and whether this caused damages and/or additional damages to Representative Plaintiffs and Class Members;

9) Whether Defendant has (since the event) adequately addressed and fixed the vulnerabilities which permitted the Data Wipe to occur in the first instance, such that consumers may again use the Covered Products with confidence;

10) Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to design, test, monitor and warn Representative Plaintiffs and Class Members of the dangers inherent in using its Covered Products;

11) Whether Representative Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct and, if so, what is necessary to redress the imminent and currently ongoing harm faced by Representative Plaintiffs, Class Members and the general public; and

12) Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.  Typicality: The Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. Representative Plaintiffs and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein. The same event and conduct that gave rise to Representative Plaintiffs' claims are identical to those that give rise to the claims of every Class Member because Representative Plaintiffs and Class Members alike had their Stored Data compromised in the same way by the same conduct of Defendant. Representative Plaintiffs and Class Members face identical threats resulting from the resetting of their hard drives and/or access by cyber-criminals to the Stored Data maintained thereon.

d.  Adequacy of Representation: The Representative Plaintiffs in this class action are adequate representatives of each of the Plaintiff Classes in that the Representative Plaintiffs have the same interest in the litigation of this case as the Class Members, are committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Classes in their entirety. The Representative Plaintiffs anticipate no management difficulties in this

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

litigation. Representative Plaintiffs and their counsel will fairly and adequately protect the interests of all Class Members.

e.  Superiority of Class Action: The damages suffered by individual Class Members are significant but may be small relative to the enormous expense of individual litigation by each member. This makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

55.     Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, such that it is impracticable to bring all Class Members before the Court.

56.     This class action is also appropriate for certification because Defendant has acted and/or has refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Classes in their entireties. Defendant's policies challenged herein apply to and affect Class Members uniformly and Representative Plaintiffs' challenge of these policies and conduct hinges on Defendant's conduct with respect to the Classes in their entireties, not on facts or law applicable only to the Representative Plaintiffs.

57.     Unless a Class-wide injunction is issued, Defendant's violations may continue and Defendant may continue to act unlawfully as set forth in this Complaint.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-14-
PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

## COMMON FACTUAL ALLEGATIONS

### Defendant's Unlawful Conduct

58.     On June 23 of 2021, Western Digital Corporation announced an attack by hackers on two of its Internet-connected devices, My Book Live and My Book Duo. This attack was possible because of multiple vulnerabilities present in the devices. Defendant knew or should have known about these vulnerabilities for years, yet did not act diligently to remedy the situation or even to warn Representative Plaintiffs and/or Class Members of them. As explained above, the result of this event is herein referred to as the "Data Wipe."

59.     One of the vulnerabilities present in the device systems allowed hackers to remotely execute malicious code in the storage devices' operating system and then, consequently, to reset the devices to factory settings without requiring a password. The practical effect of a factory reset is the complete loss of all data previously stored on said device(s).

60.     As a result of the attack, all Covered Products that were connected to the internet had their Stored Data remotely wiped clean and their users were unable to log in with their own credentials. The data that was wiped ranged from personal photos and other personal information to consumers' work product for their businesses, to financial information, etc. External hard drives have the ability to store all types of data, which can include digital keys used to access digital wallets and accounts such as cryptocurrency. Accordingly, countless Class Members not only lost the data stored on the Covered products, but also lost access to additional data stored elsewhere, the credentials for which they may have stored on the Covered Products.

61.     Such data can be extremely valuable. For example, a cryptocurrency wallet can contain tens or hundreds of thousands of dollars-worth of cryptocurrency. But such wallets typically require special credentials to access and, once lost, can oftentimes never be recovered. Any Class Member who had such credentials stored in an affected device could lose access to that wallet and its value forever.

62.     After the incident, Defendant presented to (at least some) affected users a data recovery protocol, and an offer to trade-in their devices (if deemed, in Defendant's estimation, to have been affected) for an upgrade. To take advantage of these offers, affected Covered Product

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

consumers would be required to contact Western Digital Corporations' Support center and be issued a case number by no later than July 31, 2021, or they would not be eligible for this data recovery effort under any circumstances. Furthermore, the device upgrade, where even applicable, would only be available at a cost to Covered Product consumers.[7] Indeed, even in the instance where an affected Covered Product consumer successfully navigated what was bound to be labyrinthical path to Defendant's acquiescence to an upgrade or data recovery effort, the consumer would be required to turn over his/her machine (i.e., evidence of the wrongdoing) to Defendant (i.e., the wrongdoer). And, even then, there was no guarantee of success that Defendant could recover the valuable Stored Data and little reason to assume Defendant would be returning the now worthless (as a storage device) but priceless (as litigation evidence) machine to the consumer.

63.    Additionally, such data recovery operations traditionally have mixed rates of success. Though, theoretically, some data might be recovered by doing so, it is highly probable that a significant portion of the lost data would be gone forever, corrupted, etc. Moreover, even if some data was eventually recovered in this process, the loss of access to the data for an extended period would still represent a significant harm to Representative Plaintiffs and Class Members.

64.    The deletion procedure used by unknown actors was to perform a full factory reset of the devices, wiping Representative Plaintiffs' and Class Members' Stored Data completely as if the customers had done it themselves knowingly. Consistent with these realities, Defendant's offer to provide a data recovery service and device trade-in would likely prove largely ineffectual in reversing the deletion of Representative Plaintiffs' and Class Members' Stored Data.

65.    The Stored Data accessed and/or deleted from the Covered Products is all the more concerning because there is yet another extant flaw in their systems, in this instance with Defendant's My Cloud device systems. The vulnerability was identified in 2018 by a pair of hacking researchers searching for exploits in various technology systems.[8] After finding this

---

[7] https://www.westerndigital.com/support/productsecurity/wdc-21008-recommended-security-measures-wd-mybooklive-wd-mybookliveduo (last accessed July 20, 2021)

[8] https://krebsonsecurity.com/2021/07/another-0-day-looms-for-many-western-digital-users/ (last accessed July 20, 2021).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

vulnerability, the pair of researchers published (in February 2021) a free security "patch" for users, although the patch had to be re-added if and once the device was shut down.[9] Defendant never responded to the researchers' report about the vulnerability, and ignored questions about whether the flaw was ever addressed in the operating system (OS3) of these devices.[10] The flaw was purportedly eliminated in a subsequent version of the software (OS5), and yet, the new OS version prohibited many users' ability to access various third-party applications (i.e., that OS3 had theretofore supported).[11]

**Defendant's Disregard for Customer Data Security**

66. Defendant allowed inherent flaws in the WD My Book Live and My Book Duo to remain within those systems and left Representative Plaintiffs and Class Members unprotected against a cyber-attack which could easily (and did, in this Data Wipe) erase all of their Stored Data.

67. Defendant has a history of allowing inherent flaws in the Covered Products that were dangerous to customers' information, and yet, failed both to take action to protect customers' data and to adequately address and warn consumers of Defendant's resultant security concerns.

68. Defendant admits that its My Book Live and My Book Duo product updates are no longer supported and have not been supported since 2015.

69. Representative Plaintiffs and Class Members' choice to use hardware that was no longer being supported/updated by the company, especially when Defendant knew, at least since 2018, that the Covered Products had flaws inherent thereto, does not render the customers' loss of Stored Data due to the company's behavior acceptable.

70. At all relevant times, Defendant knew, or reasonably should have known, of the importance of designing, marketing, selling and providing updated and accurate information regarding the Covered Products such that the Stored Data of Representative Plaintiffs and Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

---

[9]  Ibid. (last accessed July 20, 2021)
[10]  Ibid. (last accessed July 20, 2021)
[11]  Ibid. (last accessed July 20, 2021)

1   Members was not left vulnerable to cyber-attack. Defendant was, at all times herein relevant, aware

2   that Representative Plaintiffs and Class Members would store valuable, if not irreplaceable,

3   information on the Covered products and that an attack on the integrity of that information could

4   result in the incurrence of significant costs to Representative Plaintiffs and Class Members.

5        71.    The Data Wipe was the inevitable result of Defendant's inadequate approach to

6   product design, inadequate continued testing and monitoring of the Covered Products and/or

7   inadequate warnings to Representative Plaintiffs and Class Members of the dangers of the

8   continued use of the Covered Products and, as such, Defendant could have prevented this Data

9   Wipe. Defendant had the resources to prevent the events detailed herein but neglected to

10  adequately invest in measures calculated to do so, despite the growing number of well-publicized

11  cyber-crimes and despite knowledge that the Covered Products were vulnerable to attack.

12       72.    Had Defendant remedied these deficiencies and/or adequately warned consumers

13  by adopting measures recommended by experts in the field, Defendant could have prevented the

14  factory reset and/or, at minimum, the deletion of the Stored Data and resultant damages to

15  Representative Plaintiffs and Class Members.

16       73.    Representative Plaintiffs and Class Members now face a completely unknown and

17  very small likelihood of ever recovering their Stored Data, which may include all of the following:

18  business information, work product, financial information, identification documents, personal

19  files, pictures, and many other sensitive, important and/or irreplaceable files. Representative

20  Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to

21  any future possibility of failure of Defendant's Covered Products.

22       74.    The injuries to Representative Plaintiffs and Class Members were directly and

23  proximately caused by Defendant's acts and omission detailed herein.

24       75.    Defendant owed a duty to Representative Plaintiffs and the Classes to design,

25  maintain and test the Covered Products to ensure that the Stored Data saved on those products

26  would be and would remain adequately secured and protected.

27       76.    Defendant owed a duty to Representative Plaintiffs and the Classes to implement

28  processes that would forecast and/or detect such an event as the Data Wipe that occurred here.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-18-
PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

77.   Defendant owed a duty of care to Representative Plaintiffs and Class Members because they were foreseeable and probable victims of the events detailed herein.

**Value of the Stored Data**

78.   At present, and in addition to the foregoing, Representative Plaintiffs and Class Members are unaware as to whether their Stored Data was merely deleted, or if such information has made its way into the hands of cyber-criminals. For obvious reasons, such uncertainty represents grave concern for Representative Plaintiffs and Class Members. To date, Defendant has not revealed the full extent of the reason/cause for/of the Data Wipe, nor unequivocally denied that the information deleted is or will likely work its way into the possession of cyber-criminals.

79.   Should the information be in the hands of cyber-criminals, such an attack would represent a major score for them. This kind of information is of great value to cyber-criminals and the data involved in the Data Wipe may be used in a variety of sordid ways for criminals to exploit Representative Plaintiffs and Class Members and to profit off their misfortune.

80.   Indeed, it is well known and the subject of many media reports that such personal and/or commercial information is highly coveted and a frequent target of hackers, largely due to the frequent public announcements of data breaches.

81.   Such Stored Data is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, social security numbers, and other stolen information on a variety of underground Internet websites.

82.   Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[12] For example, with the kinds of information involved in the Data Wipe (e.g., identifying information such as Social Security and driver's licenses numbers, passwords, etc.), identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other

[12] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[13] Should such information now be in the hands of cyber-criminals, these criminal activities have and will result in devastating financial and personal losses to Representative Plaintiffs and Class Members. Indeed, it is well known and the subject of many media reports that personal information is highly coveted and a frequent target of hackers; cyber-criminals can use it and trade the information on the cyber black-market for years.

83.    For example, it is believed that certain Personal and Medical Information compromised in the 2017 Experian Data Wipe was being used, now years later, by identity thieves to apply for COVID-19-related benefits in the State of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant for identity theft.

84.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

85.    Identity thieves can use Stored Data, such as that of Representative Plaintiffs and Class Members, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

---

[13] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/. (last accessed July 28, 2021).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

86.     What's more, legitimate organizations and the criminal underground alike recognize the value in personal information contained in a merchant's data systems; otherwise, they would not aggressively seek or pay for it. For example, in "one of 2013's largest breaches . . . not only did hackers compromise the [card holder data] of three million patients, they also took registration data [containing personal information] from 38 million users." (See, Verizon 2014 PCI Compliance Report, available at: https://www.centurybizsolutions.net/wp-content/uploads/2014/09/PCI-Compliance-report-2014.pdf, at 54).

87.     The ramifications of Defendant's failure to design Covered Products that would keep secure Representative Plaintiffs' and Class Members' Stored Data are long lasting and severe. Once such personal and/or commercial information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

88.     As such, the personal information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[14] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[15] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[16]

89.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

---

[14] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed July 28, 2021).

[15] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at:* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed July 28, 2021).

[16] *In the Dark*, VPNOverview, 2019, *available at:* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed July 28, 2021).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

90.     Indeed, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

91.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[18]

92.     Based on the foregoing, the information compromised in the Data Wipe is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. Here, in many instances, Representative Plaintiffs and Class Members do not know the full extent of the Stored Data lost since, again, many of them did not maintain a reliable and/or complete inventory of the Stored Data placed in the Covered Products.

93.     Should such personal and/or commercial information either now or someday fall into the hands of cyber-criminals, there may be time lags between when harm occurs, when it is discovered, and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding cyber-crimes:

---

[17] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed July 28, 2021).

[18] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed July 28, 2021).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from Data Breaches cannot necessarily rule out all future harm.[19]

94.    As such, Representative Plaintiffs and Class Members have and will continue to be damaged, in that they will continue to worry about the use of their private information by cyber-criminals well into the future. This concern, coupled with the remedial efforts they must therefore now take, will understandably plague and damage them for years to come.

95.    If cyber-criminals managed to access financial information, health insurance information, and other personally sensitive data of Representative Plaintiffs and Class Members in this instance there would virtually no limit to the amount of fraud to which Defendant could expose the Representative Plaintiffs and Class Members.

**FIRST CLAIM FOR RELIEF**
**Violation of the Song-Beverly Consumer Warranty Act**
**(California Civil Code §1792, *et seq.*)**
**(California Subclass Only)**

96.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

97.    Defendant violated the Song-Beverly Consumer Warranty Act (hereinafter the "SBA") by, among other things, violating the implied warranties of merchantability by knowingly selling Covered Products that were unsuitable for their expected and intended use and were, therefore, not fit for the ordinary purpose for which the goods were intended to be sold.

98.    Plaintiff and Class Members are "buyers," as those terms are defined and/or used in the SBA of the Covered Products.

99.    Defendant is a "manufacturer" and/or "distributor," as those terms are defined and/or used in the SBA of the Covered Products.

100.    Each Covered Product was accompanied by an implied warranty that they were merchantable pursuant to California Civil Code §1792.

---

[19] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed July 28, 2021).

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

101.   The Covered Products were not fit for the ordinary purpose for which such goods are typically used and were not of the same quality as those generally acceptable in the trade because they maintained a vulnerability, as detailed in this Complaint, that permitted a remote factory reset and/or access by cyber-criminals to the Stored Data maintained thereon.

102.   The Covered Products did not measure up to the promises or facts stated in Defendant's marketing and/or on the Covered Products' packaging, namely that they were and would operate as safe and reliable storage devices that could be used without fear of the data thereon being deleted and/or accessed by third parties.

103.   Defendant's misconduct was a substantial factor in causing, and did proximately cause, Representative Plaintiffs' and Class Members' injury and economic loss.

104.   Representative Plaintiffs and Class Members suffered harm, damages and economic loss, and Representative Plaintiffs and Class Members will continue to suffer such harm, damages and economic loss in the future. Additionally, Representative Plaintiffs and Class Members are entitled to recover all incidental and consequential damages pursuant to California Civil Code §§1794, *et seq.* and Commercial Code §§2714 and 2715, *et seq.*

105.   Defendant's conduct was gross, reckless, and in bad faith and/or occurred with willful disregard of the rights and interest of Representative Plaintiffs and Class Members. Defendant acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Representative Plaintiffs and Class Members, so as to constitute oppression, fraud and/or malice under the law.

106.   Representative Plaintiffs and Class Members are entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorneys' fees reasonably incurred in connection with the commencement and prosecution of this action, along with prejudgment interest, pursuant to Civil Code §3287.

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

## SECOND CLAIM FOR RELIEF
### Violation of Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301, *et seq.*)

107.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

108.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(d)(2).

109.    The Covered Products are "consumer products," as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

110.    Representative Plaintiffs and Class Members are "consumers," as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

111.    Defendant is a "supplier" and a "warrantor," as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) and (5).

112.    Defendant provided Representative Plaintiffs and Class Members with "implied warranties," as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

113.    Defendant breached these implied warranties as described herein, including, but not limited to, Defendant's manufacture of defective Covered Products which caused damages to Representative Plaintiffs and Class Members. Said damages include, but are not limited to, the loss of personal and commercial data, as well as time and money incurred in attempts to retrieve such information.

114.    Defendant warranted that the Covered Products were fit for their ordinary purposes of saving data files securely, would pass without objection in the trade as being so designed, manufactured and marketed, and that they were, indeed, adequately designed, manufactured and marketed. Defendant's Covered Products share common defects, as detailed herein.

115.    By Defendant's conduct as described herein, including Defendant's knowledge of the defects and vulnerabilities inherent in the Covered Products, and its inaction while knowing of the defects and vulnerabilities, Defendant failed to comply with its obligations under its written and implied promises, warranties and representations.

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

116.   As a warrantor, and by the conduct described herein, Defendant improperly attempted to limit its implied warranties to exclude coverage for the defective Covered Products by limiting purchasers' time within which to seek replacement items, etc. Said conduct was unconscionable, and any such effort to disclaim or otherwise limit liability for the defective Covered Products is, thus, null and void. Said conduct also has no bearing on the other damages attendant to the Data Wipe, such as the loss of invaluable Stored Data.

117.   Representative Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Defendant and merchants, retailers, contractors, and/or installers of Defendant's Covered Products, including the implied warranties therefor, such that direct privity of contract is not required. Merchants, retailers, contractors and/or installers are not the intended end-users or consumers of Defendant's Covered Products; the Covered Products and accompanying warranties are for the benefit of end-users and consumers such as Representative Plaintiffs and Class Members.

118.   The Covered Products are sub-standard instrumentalities due to the aforementioned defects and vulnerabilities alleged herein such that direct privity of contract between the parties is not required.

119.   Pursuant to 15 U.S.C. § 2310(e), notice to Defendant with an opportunity to cure on behalf of the Classes is not yet required for Representative Plaintiffs to bring this action.

120.   Defendant failed to remedy the defective Covered Products and/or fully reimburse for out-of-pocket expenses incurred due to the defective Covered Products, such that compliance with any informal dispute procedure is excused as futile. Compliance with any informal dispute procedure is further excused as futile because Defendant was already aware that the Covered Products would not perform as warranted, and yet, continued to place them in the marketplace and/or continued to withhold information from Representative Plaintiffs and Class Members about the legitimate threat of hacking.

121.   As a result of Defendant's breach of implied warranties, Representative Plaintiffs and Class Members are entitled to revoke their acceptance of the Covered Products, obtain damages and equitable relief, and recover costs pursuant to 15 U.S.C. § 2310(d).

122.   Further, Representative Plaintiffs and Class Members are entitled to equitable relief under 15 U.S.C. §2310(d)(1). Based on Defendant's continuing failure to fix the Covered Products' known defects and failure to warn Representative Plaintiffs and Class Members thereof, Representative Plaintiffs seek a declaration that Defendant has not adequately implemented its recall commitments and its general commitments to fix its failed products, and injunctive relief in the form of judicial supervision over the recall process is, thus, warranted. Representative Plaintiffs also seeks the establishment of a Defendant-funded program for Representative Plaintiffs and Class Members to recover out-of-pocket costs incurred, as discussed above.

123.   Representative Plaintiffs and Class Members suffered injury and economic losses and will continue to suffer such injury and economic losses.

124.   Defendant's misconduct was a substantial factor in causing and proximately causing Representative Plaintiffs' and Class Members' injury and economic losses. Defendant's conduct was gross, reckless and in bad faith or willful disregard of the rights and interests of Representative Plaintiffs and Class Members. Defendant acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Representative Plaintiffs and Class Members, so as to constitute oppression, fraud or malice under the law.

### THIRD CLAIM FOR RELIEF
### Negligence/Failure to Warn

125.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

126.   At all times herein relevant, Defendant owed a duty of care to Representative Plaintiffs and Class Members to act with reasonable care so as not to put their Stored Data in jeopardy.

127.   Defendant breached its general duty of care to Representative Plaintiffs and Class Members in, but not necessarily limited to, failing to adequately warn Representative Plaintiffs and Class Members of the dangers of Defendant's Covered Products, including the legitimate threat of cyber-attack, and in failing to comply with applicable industry standards, and state and federal laws, rules, regulations and standards.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

128.    Representative Plaintiffs are informed and believe and, based thereon, allege that Defendant's breaches of its respective duties of care were substantial factors, as set forth above, in allowing the Data Wipe to occur and in causing Representative Plaintiffs' and Class Members' injuries and economic losses.

129.    As a direct and proximate result of the above-described willful and unlawful conduct of Defendant, Representative Plaintiffs and Class Members sustained damages, as set forth in this Complaint.

### FOURTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing

130.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

131.    Every contract in the State of California has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of the contract's express terms.

132.    Representative Plaintiffs and Class Members have complied with and performed all conditions of their contracts.

133.    Defendant breached the implied covenant of good faith and fair dealing by failing to inform Representative Plaintiffs and Class Members of the defects and/or vulnerabilities inherent in the Covered Products and failing to properly repair and/or provide a patch for those defects and/or vulnerabilities.

134.    Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

**FIFTH CLAIM FOR RELIEF**
**Unfair Business Practices**
**(Cal. Bus. & Prof. Code, §17200, *et seq*.)**
**(California Subclass Only)**

135.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

136.    Representative Plaintiffs and members of the California Subclass further bring this cause of action, seeking equitable and statutory relief to stop the misconduct of Defendant, as complained of herein.

137.    Defendant has engaged in unfair competition within the meaning of California Business & Professions Code §§17200, *et seq.*, because Defendant's conduct is unlawful, unfair and fraudulent, as herein alleged.

138.    Representative Plaintiffs, the members of the California Subclass, and Defendant are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

139.    The UCL prohibits any unlawful, unfair or fraudulent business practices or acts.

140.    Defendant's sub-standard design of the Covered Products, failure to warn of the grave dangers of continued use of the Covered Products, failure to provide a "patch" for the defects therein, failure to recall the Covered Products, and/or Defendant's deceptive misrepresentations, concealments and suppressions of material fact, as alleged herein, all constitute unlawful and/or fraudulent business practices, as set forth in California Business & Professions Code §§17200-17208, including violating the UCL's unlawful, unfair as well as fraudulent prongs. Specifically, Defendant conducted business activities for years while failing to comply with the legal mandates cited herein.

141.    Defendant knew or should have known that its Covered Products were inadequate to safeguard the Stored Data of Representative Plaintiffs and members of the California Subclass, deter hackers, and block against a breach, and that the risk of a Data Wipe was highly likely.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

142.  In engaging in these unlawful business practices, Defendant has enjoyed an advantage over its competition and a resultant disadvantage to the public and members of the California Subclass.

143.  Defendant's knowing failure to adopt policies in accordance with and/or adhere to these laws, all of which are binding upon and burdensome to Defendant's competitors, engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice, as set forth in California Business & Professions Code §§17200-17208.

144.  Defendant has clearly established a policy of accepting a certain amount of collateral damage, as represented by the injuries and damages to Representative Plaintiffs and members of the California Subclass herein alleged, as incidental to its business operations, rather than accept the alternative costs of full compliance with fair, lawful and honest business practices ordinarily borne by responsible competitors of Defendant and as set forth in legislation and the judicial record.

145.  The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Bus. & Prof. Code § 17205.

146.  Representative Plaintiffs and members of the California Subclass request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Representative Plaintiffs and members of the California Subclass any money Defendant acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

### SIXTH CLAIM FOR RELIEF
#### Unjust Enrichment

147.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

148.    By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Representative Plaintiffs and Class Members.

149.    Defendant, prior to and at the time Representative Plaintiffs and Class Members decided to purchase the Covered Products, knew and had knowledge and information that the Covered Products suffered from the aforementioned defects and vulnerabilities.

150.    Defendant was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to the Covered Products' defects and vulnerabilities before deciding whether or not to purchase and/or continuing to use them. Defendant was also aware that, if the Covered Products' defects and vulnerabilities were disclosed, it would negatively affect the demand Representative Plaintiffs and Class Members had to purchase the Covered Products.

151.    Defendant failed to disclose facts pertaining to the Covered Products' defects and vulnerabilities before Representative Plaintiffs and Class Members made their decisions to purchase and/or continue using them. Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Representative Plaintiffs and Class Members the ability to make a rational and informed purchasing decisions and took undue advantage of Representative Plaintiffs and Class Members.

152.    Defendant was unjustly enriched at the expense of Representative Plaintiffs and Class Members. Defendant received profits, benefits, and compensation, in part, at the expense of Representative Plaintiffs and Class Members who purchased the Covered Products. By contrast, Representative Plaintiffs and Class Members did not receive the benefit of their bargain because they paid for products that did not satisfy the purposes for which they bought them.

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

1    153.   Since Defendant's profits, benefits, and other compensation were obtained by

2    improper means, Defendant is not legally or equitably entitled to retain any of the benefits,

3    compensation or profits it realized from the Covered Products.

4    154.   Representative Plaintiffs and Class Members seek an Order of this Court requiring

5    Defendant to refund, disgorge, and pay as restitution any profits, benefits, and other compensation

6    obtained by Defendant from its wrongful conduct and/or the establishment of a constructive

7    trust from which Representative Plaintiffs and Class Members may seek restitution.

8

9    **PRAYER FOR RELIEF**

10    **WHEREFORE,** Representative Plaintiffs, on behalf of themselves and each member of

11    the proposed National Class and proposed California Subclass, respectfully request that the Court

12    enter judgment in their favor and for the following specific relief against Defendant as follows:

13    1.    That the Court declare, adjudge, and decree that this action is a proper class action

14    and certify each of the proposed Classes and/or any other appropriate subclasses under F.R.C.P.

15    Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Plaintiffs as Class Representatives,

16    and Representative Plaintiffs' counsel as Class Counsel;

17    2.    For an award of damages, including actual, nominal, special and consequential

18    damages, as allowed by law in an amount to be determined;

19    3.    That the Court enjoin Defendant, ordering it to cease and desist from unlawful

20    activities in further violation of California Business and Professions Code §17200, *et seq.*;

21    4.    For equitable relief enjoining Defendant from engaging in the wrongful conduct

22    complained of herein, and from refusing to issue prompt, complete, any accurate disclosures to

23    Representative Plaintiffs and Class Members;

24    5.    For injunctive relief and other equitable relief as requested by Representative

25    Plaintiffs, as is necessary to protect the interests of Representative Plaintiffs and Class Members;

26    6.    For prejudgment interest on all amounts awarded, at the prevailing legal rate;

27    7.    For any other available penalties for each illegal or fraudulent business act or

28    practice;

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF

8.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

9.    For all other Orders, findings, and determinations identified and sought in this Complaint.

### JURY DEMAND

Representative Plaintiffs, individually and on behalf of the Plaintiff Classes, hereby demand a trial by jury for all issues triable by jury.


Dated: August 6, 2021                    **SCOTT COLE & ASSOCIATES, APC**


                                         By:  _____
                                              Scott Edward Cole, Esq.
                                              Attorneys for Representative Plaintiffs
                                              and the Plaintiff Classes

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

PLAINTIFFS' COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF