KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
ANNA PORTO - # 319903
aporto@keker.com
NICHOLAS GREEN - # 323959
ngreen@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
WESTERN DIGITAL CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN RIORDAN, ASHLEY LAURENT, JEREMY BOBO, NAGUI SORIAL, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN DIGITAL CORPORATION,<br><br>Defendant. | Case No. 5:21-cv-06074-EJD<br><br>**DEFENDANT WESTERN DIGITAL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:        February 24, 2022<br>Time:       9:00 a.m.<br>Ctrm:       4<br>Judge:      Hon. Edward J. Davila<br><br>Date Filed:  August 6, 2021 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................3

I.      INTRODUCTION ......................................................................................................3

II.     BACKGROUND .........................................................................................................4

III.    ARGUMENT ...............................................................................................................6

      A.      The Court should dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ...................................6

            1.      Plaintiffs lack Article III standing to pursue any of their claims. ................7

            2.      The Court lacks jurisdiction over Plaintiffs' MMWA claim because there are fewer than 100 named plaintiffs...................................................10

      B.      The Court should dismiss all of Plaintiffs' nationwide common law class claims for lack of standing. ....................................................................................10

      C.      The Court should dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ....................................................13

            1.      Plaintiffs fail to state a claim for violations of the Song-Beverly Consumer Warranty Act. ............................................................................13

            2.      Plaintiffs' Magnuson-Moss Warranty Act claim also fails.......................15

            3.      Plaintiffs fail to state a claim for failure to warn. ....................................16

            4.      Plaintiffs fail to state a claim for breach of the duty of good faith and fair dealing. ......................................................................................17

            5.      Plaintiffs' UCL claim fails as a matter of law and because Plaintiffs have failed to state a claim for relief........................................................18

                  a.      Plaintiffs' UCL claim fails because they fail to allege that they lack an adequate remedy at law. ..............................................19

                  b.      Plaintiffs fail to state a claim under the "unlawful" prong. ...........20

                  c.      Plaintiffs fail to state a claim under the "fraudulent" prong. .........21

                  d.      Plaintiffs fail to state a claim under the "unfair" prong. ...............23

            6.      Plaintiffs fail to state a claim for unjust enrichment. ................................25

IV.     CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abuelhawa v. Santa Clara Univ.*,
No. 20-CV-04045-LHK, 2021 WL 1176689 (N.D. Cal. Mar. 29, 2021) ..............................25

*Adams v. Cole Haan, LLC*,
No. 20-CV-913 JVS, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)......................................20

*Antman v. Uber Techs., Inc.*,
No. 3:15-CV-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015)..................................9

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...........................................................................21, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................13

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ................................................................................................25

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ................................................................................................13

*Bassett v. ABM Parking Servs., Inc.*,
883 F.3d 776 (9th Cir. 2018) ..............................................................................................7, 8

*Beaver v. Tarsadia Hotels*,
29 F. Supp. 3d 1294 (S.D. Cal. 2014).................................................................................20

*Berger v. Home Depot U.S.A., Inc.*,
476 F. Supp. 2d 1174 (C.D. Cal. 2007) ..............................................................................18

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
No. 20-cv-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)..................................19

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020)...........................................................................11, 12

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................11, 14

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..............................................................................................22

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ..................................................................................17

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ...................................................................11

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)...........................................................................................10

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ...........................................................................24

*Drake v. Toyota Motor Corp.*,
   No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ............10, 11, 12

*Earth Island Inst. v. Wheeler*,
   464 F. Supp. 3d 1138 (N.D. Cal. 2020) ...................................................................6

*Easter v. Am. W. Fin.*,
   381 F.3d 948 (9th Cir. 2004) ...............................................................................10

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ........................................................... *passim*

*In re Facebook PPC Advert. Litig.*,
   709 F. Supp. 2d 762 (N.D. Cal. 2010) ...................................................................18

*Floyd v. Am. Honda Motor Co.*,
   966 F.3d 1027 (9th Cir. 2020) .............................................................................10

*Foster v. Essex Prop. Tr., Inc.*,
   No. 5:14-CV-05531-EJD, 2015 WL 7566811 (N.D. Cal. Nov. 25, 2015) ..............................9

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019)........................................................................................7

*Gaos v. Google, Inc.*,
   No. C 10:04809 JW, 2011 WL 7295480 (N.D. Cal. Apr. 7, 2011) .........................................7

*Giroux v. Essex Prop. Tr., Inc.*,
   No. 16-CV-01722-HSG, 2017 WL 1549477 (N.D. Cal. May 1, 2017)....................................8

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ..............................................................20, 23, 24, 25

*Harris v. LSP Prods. Grp., Inc.*,
   No. 2:18-cv-02973-TLN-KJN, 2021 WL 2682045 (E.D. Cal. June 30, 2021) ......................14

*Herremans v. BMW of N. Am., LLC*,
   No. CV 14-02363 MMM PJWX, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014)....................22

*Hindsman v. Gen. Motors LLC*,
   No. 17-CV-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018) ..............................14, 15

*Horne v. Harley-Davidson, Inc.*,
    660 F. Supp. 2d 1152 (C.D. Cal. 2009) ...................................................................15

*Jones v. Micron Technology Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ....................................................................12

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ...............................................................................25

*Krottner v. Starbucks Corporation*,
    628 F.3d 1139 (9th Cir. 2010) ............................................................................8, 9

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ...................................................................19

*In re Linkedin User Privacy Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) ....................................................................9

*In re MacBook Keyboard Litig.*,
    No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ..............20

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...................................................................14

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ...................................................................22

*Mountain Club Owner's Ass'n v. Graybar Elec. Co.*,
    No. 2:13-CV-1835 WBS K, 2014 WL 130767 (E.D. Cal. Jan. 14, 2014)..............16

*Rosa v. City of Seaside*,
    675 F. Supp. 2d 1006 (N.D. Cal. 2009) .................................................................16

*Saitsky v. DirecTV, Inc.*,
    No. CV 08-7918 AHM, 2009 WL 10670629 (C.D. Cal. Sep. 22, 2009) ..............22

*Saroya v. Univ. of the Pac.*,
    No. 5:20-CV-03196-EJD, 2021 WL 2400986 (N.D. Cal. June 11, 2021)..............25

*Soares v. Lorono*,
    No. 12-cv-05979-WHO, 2014 WL 723645 (N.D. Cal. Feb. 25, 2014) ..................15

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .............................................................................19, 20

*In re Sony Grand*,
    758 F. Supp. 2d 1084 (S.D. Cal. 2010)..............................................................21, 24

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).............................................................................................7

*TopDevz, LLC v. Linkedin Corp.*,
  No. 20-cv-08324-SVK, 2021 WL 3373914 (N.D. Cal. Aug. 3, 2021)............................18, 19

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)........................................................................................................8

*Williams v. Apple, Inc.*,
  No. 19-CV-04700-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020)..................13, 20, 25

*Williamson v. McAfee, Inc.*,
  No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014)............21, 23, 24, 25

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ..............................................................................................9

**State Cases**

*Anderson v. Owens-Corning Fiberglas Corp.*,
  53 Cal. 3d 987 (1991) .........................................................................................................16

*Conte v. Wyeth, Inc.*,
  168 Cal. App. 4th 89 (2008) ................................................................................................17

*Mexia v. Rinker Boat Co., Inc.*,
  174 Cal. App. 4th 1297 (2009) ............................................................................................13

*Rosburg v. Minnesota Mining & Mfg. Co.*,
  181 Cal. App. 3d 726 (1986) ...............................................................................................17

**Statutes**

Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 *et seq.* ..................................................... *passim*

Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.* ............................... *passim*

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................... *passim*

**Rules**

Federal Rule of Civil Procedure 9(b)...........................................................................................21

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................4, 6, 12

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................4, 6, 13

Federal Rule of Civil Procedure 23 .............................................................................................11

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that on February 24, 2022 at 9:00 a.m., defendant Western

3  Digital Corporation ("Western Digital" or "Defendant") will, and hereby does, move the Court,

4  located at 280 South 1st Street, San Jose, California, for an order dismissing Plaintiffs Kevin

5  Riordan, Ashley Laurent, Jeremy Bobo and Nagui Sorial's (collectively "Plaintiffs") Complaint

6  in its entirety.

7      Western Digital brings this motion under Rule 12(b)(1) of the Federal Rules of Civil

8  Procedure on the grounds that the Court lacks subject matter jurisdiction over Plaintiffs' claims

9  and under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs'

10 Complaint fails to state a claim.  This motion is based on the following Memorandum of Points

11 and Authorities, on all pleadings and papers on file or to be filed in the above-entitled action, on

12 the arguments of counsel, and on any other matters that may properly come before the Court for

13 its consideration.

14

15 Dated:  October 7, 2021                    KEKER, VAN NEST & PETERS LLP

16

17                                  By:    *s/ Erin E. Meyer*
                                          STEVEN P. RAGLAND
18                                        ERIN E. MEYER
                                          ANNA PORTO
19                                        NICHOLAS GREEN

20                                        Attorneys for Defendant
                                          WESTERN DIGITAL CORPORATION

21

22

23

24

25

26

27

28

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

This motion raises the following issues:

1.      **Standing:** Whether Plaintiffs lack standing under Article III to assert their claims, and whether the Plaintiffs lack standing to pursue claims on behalf of a Nationwide Class based on laws from states in which Plaintiffs do not reside;

2.      **Magnuson-Moss Warranty Act** ("MMWA"): Whether the Court lacks jurisdiction over Plaintiffs' MMWA claim because there are fewer than 100 named plaintiffs, and whether Plaintiffs' MMWA claim should be dismissed with prejudice for the same reason that their Song-Beverly Consumer Warranty Act fails;

3.      **Song-Beverly Consumer Warranty Act:** Whether the California Plaintiffs' Song-Beverly Consumer Warranty Act claim should be dismissed with prejudice because they failed to allege that they purchased the relevant products in California, and/or because their claims fall outside the statute of limitations;

4.      **Negligent failure to warn:** Whether Plaintiffs fail to state a claim for negligent failure to warn because they fail to allege Western Digital's knowledge, or that their alleged harm was caused by any alleged failure to warn;

5.      **Breach of covenant of good faith and fair dealing:** Whether Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiffs have not identified any contract that they entered into with Western Digital, much less any express term of such a contract on which their claim hinges;

6.      **Unfair Competition Law ("UCL"):** Whether Plaintiffs' UCL claim should be dismissed with prejudice because Plaintiffs fail to allege that they lack an adequate remedy at law, and/or should be dismissed because they have failed to state a claim under any of the UCL's "unlawful," "fraudulent" or "unfair" prongs;

7.      **Unjust enrichment:** Whether Plaintiffs' unjust enrichment and/or quasi-contract claim should be dismissed with prejudice because of the existence of a contract.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**[1]

3       Western Digital Corporation ("Western Digital" or "Defendant") is a global data storage

4 brand whose tools allow customers to preserve digital content across a range of devices.  In June

5 2021, Western Digital discovered that two of its discontinued hard drive devices, My Book Live

6 and My Book Live Duo, had been attacked by third-party hackers.  Plaintiffs have alleged that

7 these malicious actors accessed these devices through a vulnerability in the devices' firmware,

8 which allowed them to execute a factory reset and remotely erase stored data.  Most of these

9 devices were sold nearly a decade ago, and Western Digital has not supported My Book Live or

10 My Book Live Duo since 2015.  Nonetheless, Western Digital promptly informed the public of

11 the attack and offered affected users access to a trade-in program and a data recovery service.

12      Shortly after Western Digital's announcement, Plaintiffs and their counsel filed suit on

13 behalf of a nationwide class and a California subclass.  Plaintiffs baselessly allege that Western

14 Digital knew that the My Book Live and My Book Live Duo devices would be vulnerable to an

15 attack by malicious actors when it manufactured them many years ago, and that Western Digital

16 purposefully misrepresented and concealed the risk of such an attack, thus placing Plaintiffs' data

17 in jeopardy.  However, Plaintiffs do not allege that they actually lost any particular data as a result

18 of the outside attack.  Indeed, Plaintiffs concede that they ***do not know*** whether and to what

19 extent any data stored on their devices was lost at all.  Without any allegations of actual injury,

20

---

21 [1] Western Digital intends to file a motion to compel individual arbitration of the Plaintiffs' claims

22 because it believes that they consented to an End User License Agreement containing an

23 arbitration provision.  However, as set forth herein, Plaintiffs' Complaint fails to allege even the

24 most basic facts about their purchases of Western Digital products, and therefore Western Digital

25 needs to obtain this information prior to filing a motion to compel arbitration.  To date, Plaintiffs

26 have not agreed to provide this information.  Western Digital does not waive its right to compel

27 arbitration by filing this Motion, and it will diligently continue its investigation with the goal of

28 moving to compel arbitration as soon as possible.

1    Plaintiffs focus on data that **may** have been lost and why such data would have been valuable.

2    Adding to these layers of speculation, Plaintiffs baldly assert that any deleted data may have also

3    been stolen by cyber-criminals.

4           Against this backdrop, Plaintiffs assert numerous claims against Western Digital,

5    including breach of implied warranty under state and federal law, negligent failure to warn,

6    violation of California's Unfair Competition Law, breach of the duty of good faith and fair

7    dealing, and unjust enrichment.  None of Plaintiffs' claims can survive a motion to dismiss under

8    Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs lack Article III standing to

9    pursue their claims (including on behalf of a nationwide class), and they fail to state any claims

10   for which relief can be granted.  Accordingly, Plaintiffs' Complaint should be dismissed in its

11   entirety.

12   **II.    BACKGROUND**

13          Western Digital is a leading global and data storage brand that offers technologies,

14   devices, systems, and solutions to businesses and consumers.  Plaintiffs' Complaint ("Compl.")

15   ¶ 46.[2]  Western Digital's storage tools empower its customers to create and preserve digital

16   content across a range of devices.  *Id.*  On June 23, 2021, Western Digital announced that two of

17   its legacy Internet-connected hard drives, My Book Live and My Book Live Duo (the "Covered

18   Products"),[3] had been attacked by third-party hackers.  *Id.* ¶ 58.  The hackers accessed the

19   Covered Products through vulnerabilities that allowed them to execute malicious code in the

20   storage devices' operating systems and initiate a factory reset.  *Id.* ¶ 59.  Through the factory

21   reset, the hackers remotely erased data stored on certain Covered Products.[4]

22   _____

23   [2] For the purposes of this motion to dismiss only, and as required by Federal Rule of Civil

24   Procedure 12, Western Digital treats well-pleaded factual allegations in the Complaint as true.

25   [3] Plaintiffs allege that several My Book Live and My Book Live Duo device SKUs are covered

26   by Plaintiffs' claims.  *See id.* ¶ 7.

27   [4] According to Plaintiffs, Western Digital's My Cloud device system, an operating system distinct

28   from the Covered Products, contained a separate vulnerability that was identified by "a pair of

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The My Book Live and My Book Live Duo devices were manufactured by Western Digital in the early 2010s, and they have not been supported by Western Digital since 2015.  *Id.* ¶ 68.  Nonetheless, following the hackers' attack, Western Digital proactively offered affected users access to a free data recovery service program and the option to trade in impacted devices for upgraded products.  *Id.* ¶ 62.  Affected users were instructed to contact Western Digital's support center by July 31, 2021 to participate in these programs.  *Id.*  Plaintiffs do not allege that they participated in the data recovery or trade-in programs Western Digital offered or that they otherwise attempted to mitigate any losses they suffered.  But Plaintiffs assert, without any factual support, that "such data recovery operations traditionally have mixed rates of success." *Id.* ¶ 63.  Plaintiffs speculate that even if "some data might be recovered" through Western Digital's assistance, "it is highly probable that a significant portion . . . would be gone forever" or "corrupted."  *Id.*

Plaintiffs also speculate as to the type of data that may have been lost.  *Id.*  Plaintiffs allege that such data "**may** include . . . business information, work product, financial information, identification documents, personal files, pictures, and many other sensitive, important and/or irreplaceable files."  *Id.* ¶ 73 (emphasis added).  Each named Plaintiff makes boilerplate allegations that their "Stored Data was deleted," that they were "unable to recover the data deleted," and that they were "harmed both personally and economically as a result."  *Id.* ¶¶ 23, 29, 35, 41. Plaintiffs fail to allege, however, that any named Plaintiff lost any specific file or type of file as a result of the hackers' attack, or that the erased data did not also exist on another device such as a computer hard drive or redundant backup.  *See id.*  Indeed, Plaintiffs concede that they "do not know the full extent" of the data lost, since they "did not maintain a reliable and/or complete inventory."  *Id.* ¶ 92.  Lacking any allegations specific to any named Plaintiff, Plaintiffs focus on the general value of information like Social Security numbers, cryptocurrency keys, and

---

hacking researchers" in 2018.  Compl. ¶ 65.  Western Digital eliminated the flaw in a subsequent version of the devices' operating system, MyCloud OS 5.  *Id.* ¶ 65.  Plaintiffs do not allege that this vulnerability impacted any of the Covered Products or otherwise affected Plaintiffs.

5

health insurance records—none of which Plaintiffs allege they actually lost as a result of the hackers' attack.  *See id.* ¶¶ 95.

Conceding that they do not know whether their data was actually deleted, Plaintiffs speculate not only that data may have been deleted, but also that it may have "made its way into the hands of cyber-criminals."  *Id.* ¶ 78.  If Plaintiffs' data *was* taken by cyber-criminals, Plaintiffs assert that such data "would represent a major score for [the cyber-criminals]."  *Id.* ¶ 79.  But there are no facts suggesting that any of Plaintiffs' data was stolen by cyber-criminals (or that any deleted data was actually sensitive or valuable).  Plaintiffs do not, for example, claim to have fallen victim to identity or account theft following the hackers' attack.  *See id.* ¶¶ 19–42.  Nonetheless, they cite their "uncertainty" as to whether their data was stolen as a source of "grave concern," and they predict that they "will continue to worry about the use of their private information by cyber criminals."  *Id.* ¶ 94.

On this basis, on August 6, 2021, Plaintiffs filed a complaint against Western Digital asserting various claims on behalf of a nationwide class and a California subclass and seeking damages and injunctive relief.  Of the four named Plaintiffs, two are from California and two are from other states.  Plaintiffs' alleged causes of action include breach of implied warranties under federal and state law, negligent failure to warn, breach of the implied covenant of good faith and fair dealing, violation of California's Unfair Competition Law, and unjust enrichment.  None of Plaintiffs' claims can withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

## III.   ARGUMENT

### A.   The Court should dismiss all of Plaintiffs' claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is a challenge to the court's subject matter jurisdiction.  The party invoking federal court jurisdiction bears the burden of establishing that the court has the authority to grant the relief requested.  *Earth Island Inst. v. Wheeler*, 464 F. Supp. 3d 1138, 1141 (N.D. Cal. 2020).  Here, all of Plaintiffs' claims must be dismissed under Rule 12(b)(1) because Plaintiffs lack standing under Article III to pursue their claims.  Separately, as an independent basis for dismissing Plaintiffs'

1   Magnuson-Moss Warranty Act ("MMWA") claim, Plaintiffs fail to satisfy the MMWA's

2   jurisdictional requirement that there be at least 100 named plaintiffs.  Finally, and to the extent

3   any claims remain, Plaintiffs lack standing to assert claims on behalf of putative class members

4   from states in which the Plaintiffs do not reside.

5           **1.      Plaintiffs lack Article III standing to pursue any of their claims.**

6           In a class action, "federal courts lack jurisdiction if no named plaintiff has standing."

7   *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).  To establish standing, Plaintiffs "must have (1)

8   suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

9   and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136

10  S. Ct. 1540, 1547 (2016).  Here, Plaintiffs offer two theories of injury: (1) they lost data stored on

11  the My Book Live device as a result of the factory reset, and (2) they face a risk of future data

12  misuse "if [their personal data] has made its way into the hands of cyber-criminals."  Compl.

13  ¶ 78.  Under either theory, Plaintiffs lack standing.

14          *First*, Plaintiffs fail to allege that they suffered an injury in fact.  To establish the requisite

15  injury, Plaintiffs must show that they suffered an injury "that is concrete and particularized."

16  *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018) (internal quotation marks

17  omitted).  Plaintiffs' conclusory allegations as to their lost data do not establish that Plaintiffs

18  suffered a "concrete and particularized" injury.  Plaintiffs never allege whether they lost specific

19  data, instead parroting identical, boilerplate allegations that data was "deleted" from the Covered

20  Products, that they were "unable to recover the data deleted," and that they were "harmed both

21  personally and economically as a result."  *Id.* ¶¶ 23, 29, 35, 41.  Plaintiffs fail to describe whether

22  their data was permanently lost, and/or whether another copy of the data was stored elsewhere.  In

23  fact, Plaintiffs allege that they do not actually know whether they lost *any* data, because "many of

24  them did not maintain a reliable and/or complete inventory of the Stored Data placed in the

25  Covered Products."  *Id.* ¶ 92.  For any data that may have been lost, Plaintiffs fail to describe it in

26  any manner, or explain why it was valuable.  Plaintiffs cannot simply assume that they lost data—

27  without identifying what type of data may have been lost—and on that basis allege that they were

28  injured.  *Gaos v. Google, Inc.*, No. C 10:04809 JW, 2011 WL 7295480, at *3 (N.D. Cal. Apr. 7,

2011) ("[P]laintiff must still allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."); *Giroux v. Essex Prop. Tr., Inc*., No. 16-CV-01722-HSG, 2017 WL 1549477, at *2 (N.D. Cal. May 1, 2017) (internal quotation marks omitted) (the plaintiff's statements that she "has already expended time, effort, and financial resources" were insufficient to confer Article III standing "[w]ithout more clarity about the specific harm that [she] has personally suffered.") (internal quotation marks omitted).

**Second**, Plaintiffs' theory that they face a risk of future data misuse fares no better, because "conjectural or hypothetical" harm cannot be the basis for an Article III injury.  *See Bassett*, 883 F.3d at 779.  Plaintiffs speculate that their lost data may have "made its way into the hands of cyber-criminals."  *Id.* ¶ 78.  But Plaintiffs admit that whether their data was somehow also stolen is entirely "uncertain[]."  *Id.*  Such conjecture is insufficient to confer standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2212 (2021) (Article III standing was lacking despite that the "plaintiffs claimed that [the defendant] could have divulged their misleading credit information to a third party at any moment").  And there is no allegation that, as a technical matter, the vulnerability that permitted malicious third parties to cause a factory reset of certain Covered Products **also** allowed direct access to any data stored on the Covered Products.

Although courts have held that speculative harm can support Article III standing in data breach cases (which this case is not), those cases involved data that was known to have been stolen.  In *Krottner v. Starbucks Corporation*, 628 F.3d 1139 (9th Cir. 2010), for example, the plaintiffs were Starbucks employees whose names, addresses, and social security numbers were on a laptop stolen from Starbucks.  *See id.* at 1140.  The plaintiffs spent substantial time monitoring their accounts, paid for credit monitoring services, enrolled in fraud alerts, and alleged resulting anxiety and stress.  *Id.*  One named plaintiff's bank notified him that someone had tried to open an account using his social security number.  *Id.*  Given the "credible threat of real and immediate harm," the Ninth Circuit determined that the increased risk of future identity theft conferred standing on the plaintiffs.  *Id.* at 1143.  The court noted, however, that if the plaintiffs' allegations had been "more conjectural or hypothetical—for example, ***if no laptop had been stolen***, and Plaintiffs sued ***based on the risk that it would be stolen at some point in the future***—

we would find the threat far less credible." *Id.* (emphases added).

Here, no data theft is actually alleged to have occurred, and thus any risk of harm is "far less credible" than in *Krottner*. *Id.* Plaintiffs do not, for example, allege that their credit card numbers have been stolen, that they have been the victims of identity theft, or that they have been informed their data was implicated in a security breach. The only facts Plaintiffs offer suggest that their data was *not* stolen, but instead "remotely wiped clean" and "deleted." Compl. ¶¶ 60, 64. Courts have rejected attempts to rely on *Krottner* where there is no underlying data theft. In *Foster v. Essex Prop. Tr., Inc*., No. 5:14-CV-05531-EJD, 2015 WL 7566811, at *3 (N.D. Cal. Nov. 25, 2015), for example, the plaintiffs lacked standing because they had "not shown . . . that any of their information was actually stolen." *Id.* Despite the plaintiffs' "focus on third-party studies and reports regarding identity theft in general," because no "information was actually stolen, their theory of potential future harm was implausible." *Id.* at *3.

Even where there is *some* showing of data theft (which is absent here), courts have concluded that Article III standing is lacking where there is no showing that information like "social security numbers, account numbers, or credit card numbers" were stolen. *Antman v. Uber Techs., Inc*., No. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015). As the Ninth Circuit has explained, it was "the sensitivity of the personal information, ***combined with*** its theft," that "led [the court] to conclude that the plaintiffs had adequately alleged an injury in fact" in *Krottner*. *In re Zappos.com, Inc*., 888 F.3d 1020, 1027 (9th Cir. 2018) (emphasis added). In *In re Linkedin User Privacy Litig*., 932 F. Supp. 2d 1089, 1094 (N.D. Cal. 2013), for example, the plaintiff alleged that a hacking incident exposing her LinkedIn password conferred Article III standing based on her "increased risk of future harm." Despite the fact that her LinkedIn password had already been stolen and "publicly posted," the Court determined that she lacked standing because there was no "legally cognizable injury, such as . . . identity theft or theft of her personally identifiable information." *Id.* at 1094–1095; *see Antman*, 2015 WL 6123054, at *11 (plaintiffs lacked standing based on stolen names and license numbers where there was no "obvious, credible risk" of "real, immediate injury"). Here, where Plaintiffs have not alleged that *any* of their information was stolen, let alone their personal financial information, there can be no

1    Article III injury.

2         **2.    The Court lacks jurisdiction over Plaintiffs' MMWA claim because there are fewer than 100 named plaintiffs.**

3         Even if Plaintiffs had standing to pursue their claims, the Court must independently

4    dismiss the nationwide class's MMWA claim because Plaintiffs have not satisfied the

5    jurisdictional requirement of at least 100 named plaintiffs. *See* 15 U.S.C. § 2310(d)(3)(C) ("No

6    claim shall be cognizable in a suit brought [in federal district court] . . . if the action is brought as

7    a class action, and the number of named plaintiffs is less than one hundred."). Although the Class

8    Action Fairness Act ("CAFA") permits plaintiffs to invoke diversity jurisdiction by alleging the

9    existence of 100 plaintiffs without specifically naming them, "CAFA may not be used to evade or

10   override the MMWA's specific numerosity requirement." *Floyd v. Am. Honda Motor Co.*, 966

11   F.3d 1027, 1035 (9th Cir. 2020) (affirming dismissal of putative class action under the MMWA

12   with fewer than 100 named plaintiffs despite allegations of CAFA jurisdiction). Thus, Plaintiffs'

13   reliance on CAFA here cannot save their MMWA claim. *See* Compl. ¶ 15 (alleging that

14   jurisdiction exists because "there are more than 100 members in the proposed class"). Because

15   there are only four named Plaintiffs, Plaintiffs' MMWA claim on behalf of a nationwide class

16   must be dismissed.

17        **B.    The Court should dismiss all of Plaintiffs' nationwide common law class claims for lack of standing.**

18

19        If any claims remain, the Court should dismiss them to the extent they are pled on behalf

20   of a nationwide class because the Plaintiffs do not have standing to assert claims from states other

21   than California, Tennessee, and Minnesota. Courts in the Ninth Circuit have "overwhelmingly

22   ruled that plaintiffs do not have standing to assert claims from states in which they do not

23   reside[.]" *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *3

24   (C.D. Cal. Nov. 23, 2020) (internal quotation marks omitted). "[A] plaintiff must demonstrate

25   standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

26   332, 352, (2006) (internal quotation marks omitted). Moreover, "it is 'appropriate . . . to address

27   standing in advance of class certification." *Drake*, 2020 WL 7040125, at *3 (quoting *In re*

28   *Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015)); *see also Easter v. Am. W. Fin.*,

381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification.").  In other words, "when a plaintiff's lack of standing is 'plain enough from the pleadings,' it can form appropriate grounds for dismissal even if it overlaps with issues regarding whether the named plaintiffs are adequate representatives under Rule 23."  *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) (quoting *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2017 WL 3838453, at *14 (N.D. Cal. Sept. 1, 2017)).[5]

Here, Plaintiffs' Complaint asserts a series of common-law causes of action, like negligent failure to warn, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  But Plaintiffs do not specify which state law or laws they intend to assert in those causes of action—certainly, they do not allege that these causes of action are asserted *only* under the laws of California, Tennessee, and Minnesota.  To represent a nationwide class, of course, Plaintiffs must establish their standing to pursue claims on the nationwide class members' behalf.

Courts in the Ninth Circuit "frequently . . . dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products."  *Carpenter*, 441 F. Supp. 3d at 1039. (citing *Morales v. Unilever U.S., Inc.*, No. 2:13–2213 WBS EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014)).  In *Carpenter*, for example, the named plaintiff asserted California consumer-protection claims as well as various negligence claims and a claim under the MMWA.  *See* 441 F. Supp. 3d at 1031.  The *Carpenter* plaintiff was a California resident and sought to represent both a nationwide class and a California subclass.  *Id.*  The district court granted a motion to strike the

---

[5] District courts in the Ninth Circuit routinely dismiss nationwide class allegations for lack of standing in connection with Rule 12 motions.  *See, e.g.*, *Drake*, 2020 WL 7040125, at *3; *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) ("Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce." (quoting *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007–GW(PJWx), 2009 WL 9502003, at *6 (C.D. Cal. July 6, 2009)); *In re Carrier IQ*, 78 F. Supp. 3d at 1075.

nationwide claims, explaining that the plaintiff did not "have standing to assert a claim against PetSmart under any state's law but California's because [the plaintiff] did not suffer any injuries in fact traceable to any alleged violations of any other states' laws." *Id.* at 1039.  *Jones v. Micron Technology Inc.*, 400 F. Supp. 3d 897 (N.D. Cal. 2019) is also instructive.  There, the named plaintiffs sought to assert claims on behalf of citizens of twenty-five different states, even though they themselves were residents of only five states.  *Id.* at 909.  The court concluded that the named plaintiffs lacked standing to assert those claims and granted the defendant's motion to dismiss all class-action claims based on state laws from states in which the named plaintiffs did not reside.  *See id.* at 910 (collecting cases dismissing putative nationwide class claims at the pleading stage).

The outcome should be the same for the Plaintiffs' MMWA claim, notwithstanding that it is based on a federal statute.  In a recent case from the Central District of California, the court first concluded that the named plaintiffs, who were citizens of California and Illinois, lacked standing to pursue common–law claims "on behalf of the nationwide class under the laws of the jurisdictions in which the transactions took place."  *Drake*, 2020 WL 7040125, at *3 (internal quotation marks and alterations omitted).  Then, considering the plaintiffs' MMWA claim, the court determined that "Plaintiffs also do not have standing to assert claims arising under the [MMWA] on behalf on the nationwide class.  Though the MMWA is a federal law available nationwide, 'claims under the [act] stand or fall with [the plaintiff's] express and implied warranty claims under state law.'"  *Id.* at 4 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

The application of this framework to Plaintiffs' Complaint is straightforward.  Plaintiffs' own allegations establish that they are residents of California, Tennessee, and Minnesota.  But Plaintiffs also plainly plead a nationwide class based on common–law causes of action that do not specify any particular state's laws.  Plaintiffs, however, cannot pursue claims on behalf of a nationwide class in this way because they lack standing to assert claims under the laws of forty-seven different states.  Thus, to the extent Plaintiffs plead claims under the laws of states in which they do not live, the Court should dismiss or strike those allegations under Rule 12(b)(1).

C.    **The Court should dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*  (citing *Bell Atlantic,* 550 U.S. at 557) (internal quotation marks omitted).  Dismissal under Rule 12(b)(6) is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  When dismissing a complaint for failure to state a claim, the Court may dismiss the action without leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2020 WL 6743911, at *4–5 (N.D. Cal. Nov. 17, 2020).   Here, Plaintiffs fail to state any plausible claims for relief, and thus Plaintiffs' claims should be dismissed under Rule 12(b)(6).

1.    **Plaintiffs fail to state a claim for violations of the Song-Beverly Consumer Warranty Act.**

Plaintiffs' first claim under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.* (the "Song-Beverly Act"), on behalf of the California subclass should be dismissed.  "Under the Song-Beverly Act, every retail sale of 'consumer goods' in California includes an implied warranty by the manufacturer and the retail seller that the goods are 'merchantable.'" *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009).  The implied warranty "is coextensive in duration with an express warranty which accompanies the consumer goods," but "in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer." *Elias v. Hewlett-Packard Co*., 903 F. Supp. 2d 843, 852 (N.D. Cal. 2012) (citing Cal. Civ. Code § 1791.1(c)) (internal quotation marks omitted).  According to Plaintiffs, Defendants violated the Song-Beverly Act by "knowingly selling Covered Products that were unsuitable for their intended

13

1    use and were, therefore, not fit for the ordinary purpose for which the goods were intended to be

2    sold." Compl. ¶ 97. Plaintiffs' claim should be dismissed for two independent reasons.

3           **First**, Plaintiffs' Song-Beverly Act claim fails because Plaintiffs have not alleged that they

4    purchased their My Book Live devices in California. The Song-Beverly Act, however, "*only*

5    applies to consumer products purchased in California." *In re Carrier IQ*, 78 F. Supp. 3d at 1107.

6    Here, although Plaintiffs allege that two of the named Plaintiffs reside in California, Plaintiffs fail

7    to allege that they purchased the Covered Products in California. *See e.g.*, Compl. ¶¶ 31, 34, 37,

8    40 (alleging that Plaintiffs purchased the Covered Products without stating where such purchases

9    occurred). Mere allegations of California residency are insufficient. *See In re Carrier IQ*, 78 F.

10   Supp 3d. at 1107 (dismissing Song-Beverly Act claim despite allegations of California

11   residency). Accordingly, Plaintiffs' claim under the Song-Beverly Act fails.

12          **Second**, Plaintiffs' Song-Beverly Act claim fails because it falls outside the statute of

13   limitations. "[T]he statute of limitations . . . under the Song-Beverly Act is governed by Uniform

14   Commercial Code: section 2725," which provides a four-year statute of limitations. *MacDonald*

15   *v. Ford Motor Co*., 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014) (internal quotation marks

16   omitted). As California courts have explained, the accrual of a Song-Beverly Act claim occurs "at

17   tender of delivery . . . ***regardless of the aggrieved party's lack of knowledge of the breach***."

18   *Harris v. LSP Prods. Grp., Inc*., No. 2:18-cv-02973-TLN-KJN, 2021 WL 2682045, at *5 (E.D.

19   Cal. June 30, 2021) (emphasis added). In other words, even if the consumer is unaware of an

20   existing defect, the cause of action accrues "when the sale is made." *Hindsman v. Gen. Motors*

21   *LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *14 (N.D. Cal. June 1, 2018). Here,

22   Plaintiffs do not allege a date on which they purchased the Covered Products. They concede,

23   however, that Western Digital ended support for these devices in 2015 (which is a normal life-

24   cycle for these types of data storage devices). Compl. ¶ 68. Accordingly, based on Plaintiffs'

25   allegations, it follows that Plaintiffs bought their products, at the latest, in 2015. Thus, their cause

26   of action must have accrued before the end of 2015. But Plaintiffs did not file their complaint

27   until August 6, 2021—more than five years later. It is thus clear from the face of the Complaint

28   that Plaintiffs' claim falls outside the statute of limitations, and thus their claim should be

1    dismissed with prejudice.

2           Furthermore, Plaintiffs have not alleged any facts suggesting that the statute of limitations

3    should be tolled.  To allege "fraudulent concealment tolling," for example, "Plaintiffs must (1)

4    plead with particularity fraudulent concealment of the defect that allegedly breached the implied

5    warranty, and (2) demonstrate that they used due diligence in uncovering the facts relevant to the

6    claim." *Hindsman*, 2018 WL 2463113, at *14.  Here, Plaintiffs allege no facts suggesting that

7    Western Digital had knowledge of the purported defect, instead merely concluding that Western

8    Digital "knew or should have known about these vulnerabilities for years."  Compl. ¶ 58.  But

9    Western Digital "could not have fraudulently concealed a defect of which it did not have

10   knowledge," and Plaintiffs' "conclusory allegations" to the contrary are insufficient.  *See*

11   *Hindsman*, 2018 WL 2463113, at *15 (plaintiffs failed to meet statute of limitations despite

12   "conclusory allegations" that defendant "never revealed the existence of the Defect").

13          ***Finally***, to the extent Plaintiffs argue that they can save their Song-Berly Act claim by

14   alleging that the defect arose after the time of purchase, that argument would lack merit.  The Act

15   only provides an implied warranty for "one year following the sale of new consumer goods to a

16   retail buyer." *Elias*, 903 F. Supp. 2d at 852 (internal quotation marks omitted).  Any argument

17   that the alleged defect arose within the last four years would introduce yet another independent

18   basis to dismiss Plaintiffs' claim.

19                   **2.      Plaintiffs' Magnuson-Moss Warranty Act claim also fails.**

20          In addition to the jurisdictional defects discussed above, Plaintiffs' second claim under the

21   MMWA fails for the same reasons as their Song-Berly Act claim.  Although the MMWA

22   provides a federal cause of action for state warranty claims, it "does not expand the rights under

23   those claims." *Soares v. Lorono*, No. 12-cv-05979-WHO, 2014 WL 723645, at *5 n.3 (N.D. Cal.

24   Feb. 25, 2014); *see also Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1157 (C.D. Cal.

25   2009) (applying the four-year statute of limitations applicable to the Song-Berly Act to

26   MMWA claim).  Accordingly, Plaintiffs' "failure to state a warranty claim under state law

27   necessarily constitute[s] a failure to state a claim under [the MMWA]," *Soares*, 2014 WL 723645,

28   at *5 n.3 (citations omitted), and Plaintiffs' MMWA claim should be dismissed with prejudice.

### 3.     Plaintiffs fail to state a claim for failure to warn.

Plaintiffs also fail to state a claim in their third cause of action for negligent failure to warn.  "Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributer did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., *what a reasonably prudent manufacturer would have known and warned about*."  *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1014 (N.D. Cal. 2009) (citing *Anderson v. Owens-Corning Fiberglas Corp*., 53 Cal. 3d 987, 993 (1991)).  "To state a plausible claim for failure to warn, a complaint should at least identify which danger was not warned against, that the danger was substantial, that the danger was not readily recognizable to an ordinary consumer, that the manufacturer knew or should have reasonably known of the danger, and causation."  *Mountain Club Owner's Ass'n v. Graybar Elec. Co.*, No. 2:13-CV-1835 WBS K, 2014 WL 130767, at *3 (E.D. Cal. Jan. 14, 2014); *see also Rosa*, 675 F. Supp. 2d at 1011 (citing Jud. Council of Cal. Civ. Jury Instruction No. 1205).  In support of their negligence theory, Plaintiffs allege only that Western Digital "knew or should have known" that vulnerabilities in the Covered Products would lead to a subsequent attack by hackers, and that Western Digital should have warned Plaintiffs accordingly.  Compl. ¶ 58.  Plaintiffs' negligence claim fails because (1) Plaintiffs do not allege facts suggesting that Western Digital knew or should have known of any danger, and (2) Plaintiffs fail to allege that this failure to warn caused Plaintiffs' harm.

*First,* Plaintiffs fail to allege any facts showing that Western Digital knew or should have known when the Covered Products were manufactured—a decade before the attack—that those products would be attacked by technologically advanced hackers many years later.  *See Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 990 (1991) (knowledge is assessed "at the time of manufacture and/or distribution").  Plaintiffs offer no facts, for example, that Western Digital studied (or should have studied) the likelihood of a future attack, that the hackers provided any sort of warning to Western Digital, or that Western Digital could have otherwise predicted that a sophisticated attack perpetrated by advanced hackers would occur years later.  *See* Compl. ¶¶ 58–62.  The *only* facts Plaintiffs allege suggest that Western Digital became aware of the attack after it occurred.  *See id.*  Although Plaintiffs refer to "applicable industry standards," they

DEFENDANT WESTERN DIGITAL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:21-cv-06074-EJD

1   fail to allege what those standards are, or how those standards would have enabled Western

2   Digital to predict an attack by hackers.  *Id.* ¶ 127.  In sum, Plaintiffs have not shown that Western

3   Digital could or should have known when it manufactured the Covered Products that those

4   products would be attacked by a malicious third-party years into the future.

5          ***Second***, Plaintiffs do not argue that Western Digital's failure to warn played any role in

6   their alleged injuries.  A plaintiff must show that the "alleged failure to provide adequate warning

7   was a substantial factor in bringing about the injury."  *Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89,

8   112 (2008) (internal citations omitted).  In *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 751

9   (N.D. Cal. 2019), for example, the court dismissed the plaintiffs' failure to warn claim where the

10  plaintiffs "[had] not identified any specific ads or . . . materials that they [had] relied on" where

11  the defendant's warning was insufficient.  Even though the plaintiffs alleged that they had seen

12  "promotional materials for [the defendant's] devices and products," and that those materials did

13  not include "any warnings," these allegations were "not specific enough."  *Id.*

14         Here, Plaintiffs have not come close to the allegations deemed insufficient in *Colgate*—

15  they have not alleged that they saw *any* of Western Digital's advertisements, promotions, or

16  emails, or even that they visited its website prior to the hackers' attack.  *See id.* (noting the

17  plaintiffs' failure to allege that they saw "statements by [the defendant] itself").  Furthermore,

18  Plaintiffs fail to allege that they purchased the Covered Products directly from Western Digital as

19  opposed to a third-party retailer, and thus there is no basis to infer that Plaintiffs were even aware

20  of Western Digital prior to the attack.  Accordingly, there are no allegations that tend to show that

21  any warning provided by Western Digital *could* have impacted Plaintiffs' use of the Covered

22  Products.  Because a defendant need not "give a warning which could not possibly be effective in

23  lessening the plaintiff's risk of harm," *Rosburg v. Minnesota Mining & Mfg. Co.*, 181 Cal. App.

24  3d 726, 735 (1986), Plaintiffs' negligent failure to warn claim must be dismissed.

### 4.   Plaintiffs fail to state a claim for breach of the duty of good faith and fair dealing.

25

26         Plaintiffs' fourth claim for breach of the duty of good faith and fair dealing fails because

27  Plaintiffs do not identify any express contract term from which the implied duty arises.  Plaintiffs

28  allege that Western Digital breached the implied duty of good faith and fair dealing by "failing to

1   inform" Plaintiffs "of the defects" in the relevant devices and "failing to properly repair those

2   defects and/or vulnerabilities."  Compl. ¶ 133.  According to Plaintiffs, the "Class Members have

3   complied with and performed all conditions of their contracts."  *Id.* ¶ 132.  But Plaintiffs fail to

4   identify any "express term" in a contract with Western Digital "on which to hinge an implied

5   duty."  *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010) (internal

6   quotation marks omitted); *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D.

7   Cal. 2007) (dismissing implied covenant claim where "the express terms do not give rise to any of

8   the implied obligations asserted").  Indeed, Plaintiffs fail to even identify what contract they are

9   referring to, much less attach any alleged agreements to their Complaint.  But "the implied

10  covenant of good faith and fair dealing's application is limited to assuring compliance with the

11  ***express terms of the contract***," and thus it "cannot be extended to create obligations not

12  contemplated by the contract."  *TopDevz, LLC v. Linkedin Corp.,* No. 20-cv-08324-SVK, 2021

13  WL 3373914, at *8 (N.D. Cal. Aug. 3, 2021) (emphasis added).  Accordingly, Plaintiffs' claim

14  for breach of the duty of good faith and fair dealing fails.

### 5.  Plaintiffs' UCL claim fails as a matter of law and because Plaintiffs have failed to state a claim for relief.

17       Plaintiffs' fifth claim under the Unfair Competition Law ("UCL") fails as a matter of law

18  and because Plaintiffs have failed to state a claim for relief under the statute.  The UCL prohibits

19  "any unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

20  Here, Plaintiffs allege on behalf of a California subclass that Western Digital violated all three

21  prongs by failing "to warn of the grave dangers of continued use of the Covered Products," failing

22  "to provide a 'patch' for the defects therein," failing to "recall the Covered Products," and

23  through "misrepresentations, concealment, and suppressions of material facts."  Compl. ¶ 140.

24  On these bases, Plaintiffs request an injunction and restitution damages.  *Id.* ¶ 146.  Plaintiffs'

25  UCL claim fails because they cannot allege that they lack an adequate remedy at law, and because

26  Plaintiffs fail to plead a violation of the UCL's "unlawful," "unfair," or "fraudulent" prongs.[6]

---

[6] For the same reasons as discussed in connection with Plaintiffs' lack of Article III standing,
Plaintiffs also lack statutory standing under the UCL.  Plaintiffs fail to allege lost money or

1

2

### a.   Plaintiffs' UCL claim fails because they fail to allege that they lack an adequate remedy at law.

Plaintiffs cannot show that they lack adequate alternative remedies at law, which is fatal to Plaintiffs' requests for restitution and an injunction under the statute.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 838 (9th Cir. 2020).  In *Sonner*, the district court dismissed a plaintiff's UCL claim because she had "failed to establish that she lacked an adequate legal remedy" given that she had previously sought damages under another statute for the same conduct.  *Id.*  The Ninth Circuit affirmed, holding that a plaintiff seeking restitution under the UCL must "plead 'the basic requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law.'"  *Id.* at 844 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  Because the plaintiff had not alleged that she lacked an adequate legal remedy at law, the Court held that she could not seek restitution under the UCL.  *Id.*

Here, Plaintiffs' demand for restitution is similarly doomed.  Plaintiffs have not even attempted to allege that they lack an adequate remedy at law.  Nor could they:  Plaintiffs seek damages for common–law claims including negligence, breach of implied warranty, and breach of the covenant of good faith and fair dealing.  *See* Compl. ¶¶ 106, 129, 134.  As Plaintiffs have not shown and cannot show that these claimed damages would be inadequate to compensate Plaintiffs for their alleged harm, *Sonner* bars them from seeking restitution.  *See, e.g.*, *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (collecting cases dismissing UCL claims post-*Sonner* and dismissing the plaintiffs' UCL claim where they did not allege the damages sought were "inadequate or otherwise distinguish[ed] their request for restitution from their request for damages"); *TopDevz,*

---

property, and they fail to plead actual reliance on any purported misrepresentations or concealments.  *See* Cal. Bus. & Prof. Code § 17204 ("Only a person who . . . has lost money or property as a result of the unfair competition may bring suit under the UCL."); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015) (dismissing UCL claims for lack of statutory standing under all three prongs based on Plaintiffs' failure to plead reliance).

DEFENDANT WESTERN DIGITAL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:21-cv-06074-EJD

1747933

1   *LLC*, 2021 WL 3373914, at *5 (dismissing claim for restitution under the UCL where "[p]laintiffs

2   [sought] damages under various causes of action").

3       The availability of an adequate legal remedy is equally fatal to Plaintiffs' claim for an

4   injunction under the UCL.  As this Court has explained, although injunctive relief was not at issue

5   in *Sonner*, "nothing about the Ninth Circuit's reasoning indicates that the decision is limited to

6   claims for restitution."  *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL

7   6047253, at *3 (N.D. Cal. Oct. 13, 2020).  Indeed, "numerous courts in this circuit have applied

8   *Sonner* to injunctive relief claims." *Id.* (collecting cases).  Because Plaintiffs have failed to

9   comport with *Sonner*'s "clear rule" that they "plead the inadequacy of legal remedies before

10  requesting equitable relief," *Adams v. Cole Haan, LLC*, No. 20-CV-913 JVS, 2020 WL 5648605,

11  at *2 (C.D. Cal. Sept. 3, 2020), Plaintiffs' UCL claim must be dismissed in its entirety.

12      Moreover, because "the availability of an adequate legal remedy is clear from the face" of

13  the complaint, "further amendment of the complaint would be futile," and dismissal with

14  prejudice is appropriate.  *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *4; *see Williams*,

15  2020 WL 6743911, at *10 (applying *Sonner* to dismiss UCL claims with prejudice).

16          **b.**    **Plaintiffs fail to state a claim under the "unlawful" prong.**

17      Separate from Plaintiffs' failure to plead the lack of an adequate remedy at law, Plaintiffs

18  have failed to state a claim under the UCL's "unlawful," "fraudulent," or "unfair" prongs.  Cal.

19  Bus. & Prof. Code § 17200.

20      Plaintiffs fail to state a claim under "unlawful" prong because they do not identify any

21  violation of a particular statute.  But "to be 'unlawful' under the UCL, Defendants' conduct must

22  violate another 'borrowed' law." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 841

23  (N.D. Cal. 2020); *see Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1303 (S.D. Cal. 2014)

24  ("To state a cause of action based on an unlawful business act or practice . . . a plaintiff must

25  allege facts sufficient to show a violation of some underlying law.") (internal quotation marks

26  omitted).  Here, Plaintiffs fail to identify any law that would serve as the predicate for their UCL

27  claim, instead merely concluding that Western Digital has "engag[ed] in unlawful business

28

1  practices."  Compl. ¶ 142.[7]

2              c.      **Plaintiffs fail to state a claim under the "fraudulent" prong.**

3       Plaintiffs also fail to state a claim under the UCL's "fraudulent" prong.  "UCL . . . claims

4  grounded in fraud are governed by the reasonable consumer test, which requires the plaintiff to

5  show that members of the public are likely to be deceived" by the defendant's alleged fraudulent

6  statements or omissions.  *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL

7  4220824, at *6 (N.D. Cal. Aug. 22, 2014) (internal quotation marks omitted).  To state a claim

8  under the UCL that "sound[s] in fraud," Plaintiffs "must plead the time, place, and specific

9  content' of allegedly fraudulent conduct to satisfy Rule 9(b)."  *Asghari v. Volkswagen Grp. of*

10 *Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (internal quotation marks omitted);

11 *Williamson*, 2014 WL 4220824, at *6 (applying "Rule 9(b)'s heightened pleading standard" to

12 UCL fraud claim).  To support their theory under the "fraudulent" prong, Plaintiffs allege that

13 Defendant engaged in "deceptive misrepresentations, concealments and suppressions."  But

14 because Plaintiffs make *no* allegations as to Western Digital's specific statements or omissions,

15 they fail to comport with Rule 9(b)'s specificity requirement.

16      As for Plaintiffs' misrepresentation theory, they allege only that they "purchased these

17 devices in reliance on Defendant's representation that they were secure."  Compl. ¶ 8.  Plaintiffs

18 fail to allege however, *what* Western Digital's misrepresentations were, *when* they were made,

19 *who* made them, to *whom* they were made, or *why* they were false.  Plaintiffs' reference to an

20 unspecified "representation that [the devices] were secure" does not come close to satisfying Rule

21 9(b).  *See Asghari*, 42 F. Supp. 3d at 1325 ("Generally, a plaintiff must plead 'with particularity'

22 the time and place of the fraud, the statements made and by whom made, [and] an explanation of

23 why or how such statements were false or misleading when made.").  Even where plaintiffs have

24 _____

25 [7] To the extent Plaintiffs intended to rely on their other causes of action to support their UCL

26 claim, because they have not "sufficiently pleaded that Defendants have violated *any* law,"

27 Plaintiffs' theory under the "unlawful" prong also fails.  *In re Sony Grand*, 758 F. Supp. 2d 1084,

28 1091 (S.D. Cal. 2010) (emphasis added).

pointed to a defendant's specific representations or statements, courts have rejected claims under the UCL where the alleged statements are not "actionable."  *See Saitsky v. DirecTV, Inc.*, No. CV 08-7918 AHM, 2009 WL 10670629, at *12 (C.D. Cal. Sep. 22, 2009) (rejecting UCL claim where the alleged "misrepresentations" were not "actionable" because they were "not factual representations").  Because Plaintiffs have not alleged *any* representations here, let alone shown that those representations are actionable under the UCL, their misrepresentation theory fails.

Plaintiffs' theory of fraudulent omission fares no better.  As with claims of fraudulent misrepresentation, "a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity."  *Asghari*, 42 F. Supp. 3d at 1325.  At a minimum, Plaintiffs must "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information."  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).  Here, Plaintiffs state only that Western Digital "knew or should have known that its Covered Products were inadequate to safeguard" Plaintiffs' data, and that Western Digital "conceal[ed]… material facts."  Compl. ¶¶ 140, 141.  But Plaintiffs do not allege what omitted information should have been disclosed or when Plaintiffs would have encountered any such information.  They also do not provide any examples of preexisting statements or claims that should have included such information.  Without any allegations as to a particular statement or omissions, Plaintiffs' concealment theory fails.  *See Clemens*, 534 F.3d at 1026 (in the "context of post-warranty failure of engine components, California courts have viewed fraudulent concealment actions under [the UCL] with some skepticism," particularly where there has been no "representation of any kind, much less any misrepresentation").

Furthermore, courts have determined that fraudulent omissions are "only actionable if [Plaintiffs] allege some kind of safety issue."  *Elias*, 903 F. Supp. 2d at 852 (denying claim under UCL "fraudulent" prong based on failure to warn of risk that underpowered computer would catch fire because safety concerns were inadequately pleaded); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *12 (C.D. Cal. Oct. 3, 2014)

22

("[W]here, as here, a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by such asserted defect cannot be 'merely' the cost of the product's repair . . . rather, for the omission to be material, the failure must pose 'safety concerns.'"). But Plaintiffs have not alleged that the content of any supposed omission here would pertain to an issue of Plaintiffs' safety, and accordingly, their claim fails.

### d. Plaintiffs fail to state a claim under the "unfair" prong.

Finally, Plaintiffs also fail to state a claim under the UCL's "unfair" prong. California courts have articulated two tests to determine unfairness under the UCL, the "balancing test" and the "tethering test," leaving the law in this area "in flux." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 842–43. Under either test, Plaintiffs' claim fails.

***First***, under the balancing test, courts consider whether an "unfair business practice" is one that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Williamson*, 2014 WL 4220824, at *6. Here, Plaintiffs have not identified any "practice" at all, instead alleging merely that when Plaintiffs acquired the Covered Products many years ago, those products included a defect. Plaintiffs allege that Western Digital "knew" of this defect, without any factual basis. But even if Plaintiffs had sufficiently alleged Western Digital's knowledge, they have not alleged factual support to show that Western Digital has a "practice" of selling products with defects, or that permitting the risk of such defect was somehow "unfair." In *Elias*, 903 F. Supp. 2d at 858, the court denied the plaintiff's UCL claim under the "unfair" prong based on the absence of such allegations. The court concluded that "[e]ven under the more amorphous balancing test" the plaintiff's claim failed because aside from general allegations that HP's sale of underperforming computers was "unfair," "he [had] not reference[d] any established public policy that HP's actions have violated or claim[ed] that the conduct [was] immoral, unethical, oppressive, or unscrupulous." *Id.*; *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 843 (dismissing claim under "unlawful" prong where plaintiff "has not provided sufficient factual allegations to plausibly and plainly allege that [the defendant's] practices are "immoral, unethical, oppressive, unscrupulous

1  or substantially injurious to consumers").  So too here.  Plaintiffs have made no assertions that

2  any alleged Western Digital policy is "immoral, unethical, oppressive, unscrupulous" or

3  substantially injurious, and thus their UCL claim fails.  *Elias*, 903 F. Supp. 2d at 858.

4         Separately, Plaintiffs' allegations fail the balancing test because they have not alleged any

5  facts that would allow the Court to weigh any alleged injury against the utility of the alleged

6  policy.  But under the balancing test, the court must "weigh 'the utility of the defendant's conduct

7  against the gravity of the harm to the alleged victim."  *Davis v. HSBC Bank Nevada, N.A.*, 691

8  F.3d 1152, 1169 (9th Cir. 2012).  Plaintiffs assert that each named Plaintiff was "harmed both

9  personally and economically," Compl. ¶¶ 23, 29, 35, 41, but these boilerplate allegations are

10  insufficient to plead "harm to the alleged victim" as required under the balancing test, *In re*

11  *Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 844 (granting motion to dismiss under "unfair"

12  prong where "the Named Plaintiffs failed to adequately plead . . . 'harm to the alleged victim' for

13  purposes of their UCL claim").  Without allegations of injury, there is no "basis for concluding

14  that [any alleged] injury outweighs the reasons, justifications and motives of [the] Defendant[]."

15  *Elias*, 903 F. Supp. 2d at 858; *see Williamson*, 2014 WL 4220824, at *6 (dismissing claim where

16  the plaintiff had not "included allegations that go towards comparing the harm to consumers

17  against the utility of Defendant's conduct"); *In re Sony Grand HDTV Television Litig.*, 758 F.

18  Supp. 2d at 1091 (concluding that "[f]ailure to disclose a defect that might shorten the effective

19  life span of a component part to a consumer product does not constitute a 'substantial injury'

20  under the unfair practices prong of the UCL where the product functions as warranted").  Because

21  there are no allegations of any specific practice or any particular injury to Plaintiffs, Plaintiffs'

22  "unfair" theory fails.

23         **Second**, Plaintiffs' claim fails the tethering test, because they have not alleged "any harm

24  to competition or violation of the 'letter, policy, or spirit of the antitrust laws.'"  *In re Google*

25  *Assistant Priv. Litig.*, 457 F. Supp. 3d at 843.  The only statement in the Complaint that is

26  conceivably relevant to the antitrust laws is that Western Digital failed to "accept the alternative

27  costs of full compliance with fair, lawful and honest business practices ordinarily borne by

28  responsible competitors."  Compl. ¶ 144.  But as discussed above, Plaintiffs do not identity any

24

Western Digital practice, nor do they suggest a possible "alternative" to any supposed practice. *See id.* They merely assert that Western Digital should have anticipated an attack by a technologically advanced third party years before that attack happened. There is no basis in Plaintiffs' Complaint to infer that Western Digital gained any competitive advantage by failing to disclose a vulnerability of which it was not aware. *See Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 843 (dismissing claim under the "unfair" prong where the court could not "discern a single allegation . . . pertaining to competitive harm"); *Williams*, 2014 WL 4220824, at *6 (dismissing UCL claim under the unlawful prong where plaintiffs failed to identify any policy to which claim was tethered). Plaintiffs' claim under the UCL therefore must be dismissed.

### 6. Plaintiffs fail to state a claim for unjust enrichment.

Finally, Plaintiffs' sixth claim for unjust enrichment fails, because "[u]njust enrichment is not a cause of action." *Abuelhawa v. Santa Clara Univ.*, No. 20-CV-04045-LHK, 2021 WL 1176689, at *10 (N.D. Cal. Mar. 29, 2021) (internal quotation marks omitted). To the extent courts have permitted unjust enrichment claims to proceed, they have construed them as quasi-contract causes of action. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "an action based on implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Saroya v. Univ. of the Pac.*, No. 5:20-CV-03196-EJD, 2021 WL 2400986, at *3 (N.D. Cal. June 11, 2021). Here, Plaintiffs at least nominally allege the existence of a contract between the parties, and they cannot have it both ways. *See* Compl. ¶ 132. Because Plaintiffs have "alleged no facts as to how the [alleged] contract would be unenforceable," Plaintiffs' claim for unjust enrichment should be dismissed with prejudice. *Saroya*, 2021 WL 2400986, at *3–4 ("Plaintiff 'cannot plead alternative theories . . . where an express contract defines the rights of the parties.'").

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that all of the claims in the Complaint be dismissed. Because it "is clear" that Plaintiffs' Song-Beverly, MMWA, UCL, and unjust enrichment claims "cannot be saved by amendment," Defendant requests that those claims be dismissed with prejudice. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

1   Dated:  October 7, 2021                                    KEKER, VAN NEST & PETERS LLP

2

3                                          By:    s/ Erin E. Meyer
                                                  STEVEN P. RAGLAND
4                                                 ERIN E. MEYER
                                                  ANNA PORTO
5                                                 NICHOLAS GREEN

6                                                 Attorneys for Defendant
                                                  WESTERN DIGITAL CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT WESTERN DIGITAL CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
Case No. 5:21-cv-06074-EJD
1747933