1  Scott Edward Cole, Esq. (S.B. #160744)
   Laura Van Note, Esq. (S.B. #310160)
2  Cody Alexander Bolce, Esq. (S.B. #322725)
   **COLE & VAN NOTE**
3  555 12th Street, Suite 1725
   Oakland, California 94607
4  Telephone: (510) 891-9800
   Facsimile:  (510) 891-7030
5  Email:  sec@colevannote.com
   Email:  lvn@colevannote.com
6  Email:  cab@colevannote.com
   Web:    www.colevannote.com

7

8  Attorneys for Representative Plaintiffs

9

                    **UNITED STATES DISTRICT COURT**
10
                    **NORTHERN DISTRICT OF CALIFORNIA**
11

12  KEVIN RIORDAN, ASHLEY LAURENT,        **Case No. 5:21-CV-06074-EJD**
    JEREMY BOBO, NAGUI SORIAL,
13  individually, and on behalf of all others    **CLASS ACTION**
    similarly situated,
14                                          **PLAINTIFFS' FIRST AMENDED**
                            Plaintiffs,     **COMPLAINT FOR DAMAGES,**
15  vs.                                     **INJUNCTIVE AND EQUITABLE RELIEF**
                                            **FOR:**
16  WESTERN DIGITAL CORPORATION,
                                            1.  **VIOLATION OF THE SONG-BEVERLY**
17                          Defendant.          **CONSUMER WARRANTY ACT**
                                            2.  **NEGLIGENCE/FAILURE TO WARN**
18                                          3.  **BREACH OF THE COVENANT OF**
                                                **GOOD FAITH AND FAIR DEALING**
19                                          4.  **UNFAIR BUSINESS PRACTICES**
                                                **(CALIFORNIA "UCL")**
20                                          5.  **UNJUST ENRICHMENT**
21
22                                              **JURY TRIAL DEMANDED**
23
24
25
26
27
28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Representative Plaintiffs allege as follows:

## INTRODUCTION

1.      This is a class action brought by Representative Plaintiffs on behalf of themselves as well as on behalf of a National Class and a California Subclass of all entities/persons whose personal, commercial and/or proprietary information (hereinafter the "Stored Data") was accessed and/or deleted, starting as early as June 23, 2021, by unauthorized persons in the compromised device event announced by Defendant Western Digital Corporation ("Defendant") on or about June 23, 2021 (hereinafter the "Data Wipe").[1]

2.      Representative Plaintiffs Kevin Riordan, Ashley Laurent, Jeremy Bobo and Nagui Sorial ("Representative Plaintiffs" or "Plaintiffs") bring this class action against Defendant for its failure to properly secure and safeguard Representative Plaintiffs' and Class Members' personal, commercial and/or proprietary information stored within Defendant's devices and/or to ensure that Representative Plaintiffs and Class Members purchased devices that operated in a secure manner as were appropriate for use as secure storage devices.

3.      Because of Defendant's negligent and fraudulent acts and omissions, Defendant's customers, especially those who had configured Defendant's external hard drives to be remotely accessible, have since (starting on or about June 2020) discovered that the data stored thereon had been erased.

4.      According to a June 24, 2021 statement by Defendant, "Western Digital has determined that some My Book Live and My Book Live Duo devices *are being compromised through exploitation of a remote command execution vulnerability*. In some cases, the attackers have triggered a factory reset that appears to erase all data on the device." While acknowledging that "our customers' data is very important," Defendant concedes that it "[does] not yet understand why the attacker triggered the factory reset."

---

[1]    https://www.bleepingcomputer.com/news/security/wd-my-book-nas-devices-are-being-remotely-wiped-clean-worldwide/ (last accessed July 20, 2021)

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

5. Regardless of Defendant's alleged efforts to investigate after the Data Wipe, Representative Plaintiffs and Class Members have already suffered damages, including but not limited to years-worth of lost sensitive, intimate, and valuable personal, commercial and/or proprietary information (hereinafter the "Stored Data"). The nature of this data ranges from important financial information to priceless personal items such as family photos of vacations, childbirths, graduations and holidays. Indeed, many Class Members stored massive amounts of data on the Covered Products, all of which has since been deleted. What's more, in many instances, Class Members kept little or no inventory of what information was stored on their Covered Products, meaning that the full extent of their loss may never be fully known.

6. Defendant is a corporation that touts itself as developing, manufacturing, and providing data storage devices and claims to address the evolving needs of information technology.[2] Therefore, at all relevant times, Defendant knew or should have known that its customers would use Defendant's storage devices to store personal, commercial and/or proprietary information and that Defendant's products, especially those at issue here which were connected to the Internet, were expected to ensure the security of customers' data. Indeed, Defendant marketed these products at all times for precisely those purposes.

7. Representative Plaintiffs and Class Members purchased one or more of the following devices (hereinafter the "Covered Products") during the class period:

- My Book Live SKU: WDBACG0030HCH
- My Book Live SKU: WDBACG0020HCH
- My Book Live SKU: WDBACG0010HCH
- My Book Live Duo SKU: WDBVHT0080JCH
- My Book Live Duo SKU: WDBVHT0060JCH
- My Book Live Duo SKU: WDBVHT0040JCH

8. Each of these devices had multiple security flaws present in their software from their creation that allowed remote hackers to remove customer data therefrom and perform a "factory reset" of the devices without the customers' login information. Representative Plaintiffs

---

[2] https://www.westerndigital.com/company (last accessed July 20, 2021)

1   and Class Members purchased these devices in reliance on Defendant's representation that they

2   were secure and that Defendant was committed to safely preserving their data.

3       9.      As such, Defendant owed a duty of care to Representative Plaintiffs and Class

4   Members. Specifically, Defendant owed a duty to design and provide products that would not

5   jeopardize the Stored Data of Representative Plaintiffs and Class Members. Defendant breached

6   this duty by allowing known issues and/or vulnerabilities with the products to remain without any

7   remedy or notification—issues and abilities that were ultimately used by cyber-criminals to access

8   and/or delete massive volumes of Class Member data. At present, according to Defendant, the only

9   way to avoid further harm to the Covered Products and any data potentially remaining thereon is

10  to disconnect the Covered Products from the Internet—either physically or by configuring a router

11  or firewall to prevent access from outside the user's home network.

12      10.     Defendant's negligent and/or careless acts and omissions resulted in the access

13  and/or erasure by unauthorized third parties of Representative Plaintiffs' and Class Members'

14  Stored Data.

15      11.     Defendant's negligence ultimately resulted in Representative Plaintiffs and Class

16  Members losing some or all of their Stored Data that they maintained on Defendant's Covered

17  Products. The erasure of this data occurred without consent or any action taken by the

18  Representative Plaintiffs and/or Class Members.

19      12.     Representative Plaintiffs bring this action on behalf of all persons whose Stored

20  Data was compromised as a result of Defendant's failure to: (i) design the Covered Products

21  (including designing and providing updated features, software and/or patches) in a manner

22  consistent with the Covered Products' expected and intended use, and/or (ii) warn Representative

23  Plaintiffs and Class Members of flaws, defects and over vulnerabilities in these defective products.

24  Defendant's conduct amounts to negligence as well as reckless and knowing conduct and violates

25  federal and state statutes.

26      13.     Representative Plaintiffs and Class Members have suffered injury and economic

27  loss as a result of Defendant's conduct. These injuries include: the deletion, compromise,

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1    publication and/or theft of their Stored Data, out-of-pocket expenses associated with the

2    prevention, detection, and recovery from deletion of their Stored Data, lost opportunity costs

3    associated with efforts expended and the loss of productivity addressing and attempting to mitigate

4    the actual and future consequences of the Data Wipe, including but not limited to efforts spent

5    researching how to prevent, detect, contest and recover the loss of data, and future costs in terms

6    of time, effort and money that will be expended to prevent, detect, contest, and repair the impact

7    of the Stored Data deleted as a result of the Data Wipe for the remainder of the lives of

8    Representative Plaintiffs and Class Members.

9        14.    Following the Data Wipe, Representative Plaintiffs paid out of pocket to, among

10   other things, purchase new storage devices, secure credit monitoring services, and seek services

11   that may aid in the recovery of their lost data. They would not have suffered these expenses if not

12   for Defendant's conduct.

13       15.    Following the Data Wipe, Representative Plaintiffs spent substantial time, without

14   limitation researching the cause and source of the Data Wipe, as well as solutions, researching data

15   recovery more generally, determining what information precisely was lost and whether that

16   information was backed up elsewhere, taking steps to recover lost information, looking for new,

17   more secure storage devices, evaluating potential future threats they might face as a result of the

18   Data Wipe, exploring credit monitoring services and other options to protect themselves future

19   identity theft, and seeking counsel. This is time Representative Plaintiffs otherwise would have

20   spent more productively. This time is lost forever and can never be recovered.

21       16.    Defendant disregarded the rights of Representative Plaintiffs and Class Members

22   by intentionally, willfully, recklessly or negligently designing the Covered Products, by failing to

23   issue a recall thereof, by failing to warn Representative Plaintiffs and Class Members of

24   vulnerabilities therein, and, generally, by otherwise failing take and implement adequate and

25   reasonable measures to ensure that Representative Plaintiffs' and Class Members' Stored Data was

26   safeguarded. As a result, the Stored Data of Representative Plaintiffs and Class Members was

27   compromised through disclosure to an unknown and unauthorized third party—an undoubtedly

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1   nefarious third party that likely seeks to profit off this disclosure by defrauding Representative

2   Plaintiffs and Class Members in the future. Representative Plaintiffs and Class Members have a

3   continuing interest in ensuring that their information is and remains safe, and they are, thus, entitled

4   to injunctive and other equitable relief.

5

6   **JURISDICTION AND VENUE**

7         17.    Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction).

8   Specifically, this Court has subject matter and diversity jurisdiction over this action under 28

9   U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum

10  or value of $5 million, exclusive of interest and costs, there are more than 100 members in the

11  proposed class, and at least one other Class Member is a citizen of a state different from Defendant

12  as Defendant sells and/or has sold Covered Products to Class Members who are citizens of other

13  states.

14        18.    Supplemental jurisdiction to adjudicate issues pertaining to California state law is

15  proper in this Court under 28 U.S.C. §1367.

16        19.    Defendant maintains headquarters in California, routinely conducts business in

17  California, has sufficient minimum contacts in California and has intentionally availed itself of

18  this jurisdiction by marketing and selling products, and by accepting and processing payments for

19  those products and services within California.

20        20.    Venue is proper in this Court under 28 U.S.C. § 1391 because the events that gave

21  rise to Representative Plaintiffs' and many Class Members' claims took place within the Northern

22  District of California, and Defendant does business in and is headquartered in this Judicial District.

23

24  **PLAINTIFFS**

25  **Plaintiff Kevin Riordan**

26        21.    Representative Plaintiff Kevin Riordan ("Riordan") is an adult individual and, at

27  all relevant times herein, a resident of the State of Tennessee. Riordan is a victim of the Data Wipe.

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-6-
FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

22. Riordan purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

23. At all times herein relevant, Riordan is and was a member of the National class.

24. Riordan purchased the Covered Product(s) for the purpose of storing personal and financial data thereon. During the class period, Riordan used the particular Covered Product(s) for its/their advertised, expected and intended purpose(s).

25. As a result of the Data Wipe, detailed here, Riordan's Stored Data was deleted from his particular Covered Product(s). Riordan has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

26. Defendant did not inform Riordan of the vulnerability that led to the Data Wipe and gave Riordan no advanced warning that the deletion of his files was a legitimate threat. At all times prior to the Data Wipe, Defendant told Riordan his data was safe and that the Covered Product(s) he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

27. Riordan used the Covered Product primarily to store priceless family photos and videos. These photos date back to, at least, the mid-1990s and include memorialize important events and milestones such as family vacations, holiday gatherings, and other events. Riordan purchased a Covered Product for the safe storage of these photos and videos as they were important to him and his family. Fortunately for Riordan, he maintained some, but not all, of older hard drives and was, thus, able to partially recreate the library he stored on his Covered Product(s), but the remainder of the photos are lost forever.

28. Upon purchasing his Covered Product, Riordan transferred those hundreds if not thousands of photos and videos he already had to the Covered Product for storage. After purchasing his Covered Product, Riordan made it a practice to store new photos and videos on his Covered Product. For this reason, he knows his Covered Product contained these photos and videos. Moreover, since his practice was to store those new photos on his Covered Product, these were not backed up elsewhere. For this reason, Riordan knows those newer photos and videos are lost.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1    29.    The loss of these personally valuable and/or priceless photos caused Riordan

2  emotional distress. So much so that Riordan went to significant lengths to try and restore them.

3  First, in the weeks and months after the Data Wipe he went back through his old hard drives and

4  attempted to piece together old photos and videos that he stored there. He was so desperate to

5  restore his priceless data that he undertook this project even though it was an extremely labor-

6  intensive process. In order to do so, he had to piece together thousands of files stored on

7  approximately six different old devices. His efforts to, at least partially, recreate this well-curated

8  library required several full days of effort.

9    30.    Second, Riordan determined that Defendant, as the designer and manufacturer of

10  the product would be in the best position to help him restore his data. Accordingly, following the

11  Data Wipe, he contacted Defendant's support department in an attempt to reverse the Data Wipe.

12  His efforts with Defendant followed this pattern: he made initial contact to open a ticket and

13  describe his issue. After that, he went through a serious of attempted fixes to the device. Support

14  would propose a fix and, because these fixes were often time consuming or required some waiting

15  time, he would attempt a fix off the phone. When a respective fix would fail, he would call back,

16  explain it failed, and support would propose the next possible fix. Ultimately, even Defendant's

17  own support had no solution that could restore his data. As such, this proved little more than a

18  waste of time. In total Riordan spent approximately 16 hours working with Defendant's support

19  department trying to restore his lost data(this includes time spent on the phone and other time

20  working on his devices). This is time, Riordan will never get back and was unable to put toward a

21  product purpose.

22    31.    After this failed, Riordan considered other options to recover his missing data.

23  While his painstaking efforts to recreate the library lost in the Data Wipe resulted in some older

24  photos being salvaged, he was still missing hundreds if not thousands of photos that were not

25  stored elsewhere, a substantial portion of his total library. These photos were disproportionately

26  meaningful to Riordan since they included particularly special memories, such as those involving

27  his current wife. However, because even Defendant could not devise a way to restore his data,

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

Riordan determined it was hopeless to employ a third party to try and restore his data. If Defendant itself could not resolve the issue, surely nobody else could. Moreover, as he learned more about the Data Wipe in the recovery process, the severity of the Data Wipe and unlikelihood of successful reversal became clear to him. Accordingly, it simply made no sense for him to spend hundreds or thousands of dollars to a third party in a futile attempt to resolve an issue even Defendant had no luck fixing.

**Plaintiff Ashley Laurent**

32.     Representative Plaintiff Ashley Laurent ("Laurent") is an adult individual and, at all relevant times herein, resident of the State of Minnesota. Laurent is a victim of the Data Wipe.

33.     Laurent purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

34.     At all times herein relevant, Laurent is and was a member of the National class.

35.     Laurent purchased the Covered Product(s) for the purpose of storing personal and financial data thereon. During the class period, Laurent used the particular Covered Product(s) for its/their advertised, expected and intended purpose(s).

36.     As a result of the Data Wipe, detailed here, Laurent's Stored Data was deleted from his particular Covered Product(s). Laurent's has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

37.     Defendant did not inform Laurent of the vulnerability that led to the Data Wipe and gave Laurent no advanced warning that the deletion of his files was a legitimate threat. At all times prior to the Data Wipe, Defendant told Laurent his data was safe and that the Covered Product(s) he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

38.     Laurent used the Covered Product(s) to store, among other things, videos and photos of his young son. These photos and videos were priceless and cannot be replaced, nor could

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1   they be recovered, despite his various and time-intensive efforts to do so. They were lost in the

2   Data Wipe and not backed up elsewhere.

3        39.   Laurent also used the Covered Product(s) to store contact information and

4   correspondence. As a salesperson, a large network of contacts is vital to Laurent's livelihood. Over

5   30 years, Laurent had compiled a vast network of individuals and organizations into which he

6   could tap for repeat business, making this information extremely valuable. He stored this

7   information and correspondence with important contacts on the Covered Product(s) but, due to the

8   Data Wipe, these items could not be recovered. This information was not backed up elsewhere,

9   was of commercial value to Laurent, and is lost forever. The loss of the information severely affects

10  Laurent's ability now to earn a living.

11       40.   In addition to the contact information, Laurent also used his Covered Devices to

12  store other professional information. For example, he stored multiple presentations that he had

13  honed over the course of decades and regularly used to close sales. He also stored various templates

14  (e.g., for letters, etc.) which were the product of decades of work to hone to perfection. This

15  information was not backed up elsewhere and could not be recovered. Accordingly, it is lost

16  forever. Laurent purchased the Covered Devices to, *inter alia*, store this type of information. So,

17  when he developed a new presentation or template, he transferred it directly to his Covered Device

18  for safe keeping.

19       41.   Additionally, Laurent stored important personal information such as account

20  statements, mortgage documents, and tax information on the Covered Products. More specifically,

21  this included important insurance information. For example, Laurent had made an insurance claim

22  for repairs to his roof. Stored on his Covered Products was important correspondence with the

23  contractor and broker and other documents related to this claim. This also included his policy

24  information and insurance quotes. In addition to the insurance information, Laurent also stored on

25  his Covered Devices loan documents connected to his mortgage. Lastly, stored on his Covered

26  Devices was highly sensitive Personal Health Information. This included, *inter alia*, prescription,

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  treatment, and diagnostic records as well as bills and other records of care. This information was

2  also forever lost in the Data Wipe and cannot be recovered.

3      42.    *Inter alia*, this information included highly sensitive information such as Social

4  Security numbers and financial account information. Cybercriminals with access to this

5  information could use it to open up credit cards or take out loans in Laurent's name, or otherwise

6  subject him to massive risk of identity theft. Even if cybercriminals did not access this information,

7  much of this information is not readily available to Laurent and effort will be required to re-access

8  and restore it elsewhere. Accordingly, lost access, lost time and the potential theft of this

9  information reasonably caused Laurent economic loss, not to mention severe concern about the

10  security of his identity and the possibility of unauthorized persons accessing his Personal Health

11  Information.

12      43.    Laurent purchased a Covered Product in part to store this kind of information.

13  Accordingly, when making a new contact or receiving a new bill, invoice, or statement, Laurent

14  made it a practice to store that information on his Covered Product. Likewise, for the contact

15  information, presentations, templates, and insurance financial, and medical information. Because

16  the entire purpose of purchasing the Covered Product was to provide for the secure storage of this

17  information, he did not back up this data elsewhere (i.e., because Defendant assured secure storage,

18  an assurance on which Laurent relied).

19      44.    Shortly after the Data Wipe, Laurent brought three Covered Products to Best Buy

20  to attempt recovery of his lost data. He brought the products to Best Buy because he had several

21  previous experiences with the Best Buy "Geek Squad" in which they had performed well, and he

22  trusted them to resolve his issues. In total, for all of his devices, he paid about $400 to try and

23  recover his lost data. Given the decades of valuable information lost in the Data Wipe, Laurent

24  considered it worthwhile to pay this substantial sum for even the possibility of partial recovery.

25  Despite paying for this service, no useable data was recovered. That which was recovered was

26  fragmentary to the point of uselessness. For example, a phone number or email address with no

27  corresponding name or other contact information. Some text files were rendered as pictures, while

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

others were simply gibberish. Accordingly, despite his best efforts, for all intents and purposes, his entire library of information was lost.

**Plaintiff Jeremy Bobo**

45.     Representative Plaintiff Jeremy Bobo ("Bobo") is an adult individual and, at all relevant times herein, resident of the State of California. Bobo is a victim of the Data Wipe.

46.     Bobo purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

47.     At all times herein relevant, Bobo is and was a member of the National class and California Subclass.

48.     Bobo purchased the Covered Product(s) for the purpose of storing personal and financial data thereon. During the class period, Bobo used the particular Covered Product(s) for its/their advertised, expected and intended purpose(s).

49.     As a result of the Data Wipe, detailed here, Bobo's Stored Data was deleted from his particular Covered Product(s). Bobo has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

50.     Defendant did not inform Bobo of the vulnerability that led to the Data Wipe and gave Bobo no advanced warning that the deletion of his files was a legitimate threat. At all times prior to the Data Wipe, Defendant told Bobo his data was safe and that the Covered Product(s) he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

51.     Bobo is self-employed and generates a large volume of important and sensitive documents related to his business. Bobo used Covered Product(s) to store this information (e.g., invoices, financial statements, tax information, contracts, customer/client information and business contacts). This information was lost in the Data Wipe and has not been recovered as much of the information was not backed up elsewhere. The permanent loss of this information caused and continues to cause interruption to Bobo's business. This data also included sensitive financial

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

information that could be used by cybercriminals to defraud Bobo and/or his business and/or to commit other unlawful acts at his expense.

52.     Bobo also stored a large number of priceless family photos on his Covered Product(s). These photos were lost in the Data Wipe and have not been recovered. Most of these photos were not backed up elsewhere and are lost forever.

**Plaintiff Nagui Sorial**

53.     Representative Plaintiff Nagui Sorial ("Sorial") is an adult individual and, at all relevant times herein, resident of the State of California Sorial is a victim of the Data Wipe.

54.     Sorial purchased, used and lost data of personal and economic value due to the negligent and/or reckless and knowing conduct and omissions of Defendant, as detailed herein.

55.     At all times herein relevant, Sorial is and was a member of the National class and California Subclass.

56.     Sorial purchased the Covered Product(s) for the purpose of storing personal and financial data thereon. During the class period, Sorial used the particular Covered Product(s) for its/their advertised, expected and intended purpose(s).

57.     As a result of the Data Wipe, detailed here, Sorial's Stored Data was deleted from his particular Covered Product(s). Sorial has been unable to recover the data deleted, has spent time investigating the cause of the deletion and opportunities for recovery thereof, and has otherwise been harmed both personally and economically as a result.

58.     Defendant did not inform Sorial of the vulnerability that led to the Data Wipe and gave Sorial no advanced warning that the deletion of his files was a legitimate threat. At all times prior to the Data Wipe, Defendant told Sorial his data was safe and that the Covered Product(s) he purchased was/were adequate and suitable for its/their advertised, expected and intended use.

59.     Sorial used the Covered Product(s) to store, among other things, family photos and videos. In fact, Sorial's entire family used Covered Product(s) to store their photos and videos. Accordingly, since these photos were not stored elsewhere, Sorial's family lost all the photos and

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

videos in the Data Wipe. Specifically, Sorial purchased the Covered Products specifically to create a secure, centralized storage system for his family. Accordingly, he set the system up so that whenever anyone took a new photo, they would transfer it directly to his Covered Products and then delete it from the native device such that no duplicates were necessary and only one copy—easily accessible to everyone in the family—existed.

60.     Additionally, Sorial used Covered Product(s) to store important government documents (e.g., Immigration and Naturalization documents, both from the United States and from he and his wife's respective home countries) which are difficult, if not impossible, to replace. Other documents lost in the Data Wipe included tax records and bank statements. This information further included highly sensitive information such as Social Security numbers and financial account information. Cybercriminals with access to this information could use this information to open up credit cards or take out loans in Sorial's name, or otherwise subject him to massive risk of identity theft. What is already certain, however, is that searching for and/or recreating these records has and will continue to take a massive amount of time for Sorial, time he could have and would like to have devoted to earning a living and/or pursuing other economically lucrative activities. Finally, the potential theft of this information reasonably caused Sorial severe concern about the security of his identity. While Sorial has some of these documents in hard copy, it would be extremely labor intensive to re-digitize those which he does have (dozens of hours at minimum).

61.     Further, Sorial stored a substantial music collection on his Covered Product(s). Much, if not all, of this music is foreign-produced music not ordinarily available in the United States. He obtained this music by purchasing hard copies (i.e., CDs) from outside the country. He then "ripped" this music from these hard copies and stored the digitized versions on his Covered Product(s), and then disposed of the source materials. Sorial spent a significant sum of money on this music and the process of "riping" this music involved countless hours of labor. Sorial's music was lost in the Data Wipe and has not been recovered. He does not have the source material or back up files of these materials.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL.: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

62.     Because of the large volume of data he stored on his Covered Product(s), the information required careful organization to be of much use to him. Accordingly, Sorial spent countless hours identifying, naming, and organizing the files stored on his Covered Product(s), work that is not worthless, and work which will have to be repeated as he begins to rebuild this massive entertainment library.

63.     Immediately following the Data Wipe, Sorial initially believed that the issue was caused by operator error and believed there was a simple fix. So, he tried some basic trouble shooting, then went online to research these devices to see if he could find the issue. It was then he discovered other victims of the Data Wipe sharing similar issues they had with the same devices on various web forums. At this point, he realized that there was a larger network issue and went to Defendant's support page to learn more. Having learned more about the Data Wipe, he contacted Defendant directly, attempting to learn more. In total, he spent several nights (a few hours each night) working with support and attempting to resolve the issue. Ultimately, Defendant suggested he simply send it his device, which Sorial was understandably reluctant to do given that it had not shown any ability to resolve the issue.

64.     Next, Sorial consulted with no less than 10-15 different data recovery services. These services included, for example: Knoll Drive Savers, Protech Data Recovery, File Savers, and Allen Data. Each gave him a quote ranging from about $1,200 to about $2,400. Most of these services told him it was unlikely his data could be recovered but said they would try their best. Two of them, Knoll Drive Savers and Allen Data said that they were familiar with the products and were more optimistic some data could be restored. However, even they informed him it would be extremely difficult to recovery anything. Moreover, they warned him that whatever was recovered would likely just be raw data (i.e., no file names or other organization). Accordingly, given the large number of files, recovery in this form would render the data virtually useless. Given the large expense and long odds of such a recovery process, Sorial reasonably determined that it simply was not worthwhile attempt such a recovery, especially when the best possible outcome would involve recovering his data in a form that was all but useless.

**DEFENDANT**

65.     Defendant Western Digital Corporation is and was a business entity, formed and incorporated in the State of Delaware, with headquarters located at 5601 Great Oaks Pkwy, San Jose, California 95119.[3]

66.     Defendant's failure, unwillingness and/or inability to adequately design, market, sell and provide reasonable updated information and warnings regarding the Covered Products was not for lack of resources. Defendant is currently ranked #182 on the Fortune 500 Revenue Rank. For the fiscal year ending September 2020, Defendant reported annual revenue of $16,740,000,000.[4]

67.     Additionally, the scope and sophistication of Defendant's operation is further reflected in the large salaries of its executives. In fiscal year ending in September 2020, Defendant paid its Chief Executive Officer $36 million in annual compensation.[5] Other executives have also taken home eight figure annual compensation packages and several other employees have received compensation in the high seven figures.[6]

68.     Despite its impressive profitability and lavish executive compensation, Defendant pitches itself as an organizations committed to creating a better world and enabling new technologies. On its website, Defendant claims to be "a leading global data storage brand that empowers you to create, experience and preserve your digital content across a range of devices." Defendant purports to be more than merely a technology company—providing "innovation at the boundaries of technology." Defendant's failure to design and maintain Covered Products that will safeguard Representative Plaintiffs' and Class Members' highly sensitive data, despite having adequate resources to do so, belies this high-minded sentiment.

---

[3] https://www.westerndigital.com/office-locations (last accessed July 20, 2021)

[4] https://investor.wdc.com/news-releases/news-release-details/western-digital-reports-fiscal-third-quarter-2021-financial (last accessed July 20, 2021)

[5] https://www.execpay.org/news/western-digital-corp-2020-compensation-969 (last accessed July 20, 2021)

[6] *Ibid.* (last accessed July 20, 2021)

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

69.     In addition to violating its purported commitment to its customers, Defendant's failure to design, market and sell Covered Products that are functional and adequate for their expected, advertised and intended use also breaches duties it owes Representative Plaintiffs and Class Members under statutory and common law. Representative Plaintiffs and Class Members placed years of highly sensitive and oft-irreplaceable data on the hard drives of the Covered Products under the implied condition that the Covered Products would keep such information intact, private and secure. Accordingly, Defendant also has an implied duty to design functional products adequate for their expected, advertised and intended use that exists independent of any statute.

70.     Defendant violated its duty to Representative Plaintiffs and Class Members through its failure to protect against a foreseeable cyberattack–a completely unsurprising fact given that Defendant's devices involved in the attack have a common inherent flaw. By these omissions and/or affirmative conduct, Defendant failed to satisfy its own "mission" of "preserv(ing) your digital content across a range of devices."

71.     The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiffs. Representative Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## CLASS ACTION ALLEGATIONS

72.     Representative Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following classes/subclass(es) (collectively, the "Classes"):

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

National Class:

"All individuals within the United States of America who, during the applicable class period, purchased and/or used one or more of the following Western Digital Corporation products and suffered resultant injury and/or economic harm:

- My Book Live SKU: WDBACG0030HCH
- My Book Live SKU: WDBACG0020HCH
- My Book Live SKU: WDBACG0010HCH
- My Book Live Duo SKU: WDBVHT0080JCH
- My Book Live Duo SKU: WDBVHT0060JCH
- My Book Live Duo SKU: WDBVHT0040JCH"

California Subclass:

"All individuals within the State of California who, during the applicable class period, purchased and/or used one or more of the following Western Digital Corporation products and suffered resultant injury and/or economic harm:

- My Book Live SKU: WDBACG0030HCH
- My Book Live SKU: WDBACG0020HCH
- My Book Live SKU: WDBACG0010HCH
- My Book Live Duo SKU: WDBVHT0080JCH
- My Book Live Duo SKU: WDBVHT0060JCH
- My Book Live Duo SKU: WDBVHT0040JCH"

73.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

74.     Also, in the alternative, Representative Plaintiffs request leave to add Subclasses as necessary based on the types of Stored Data that were compromised.

75.     Representative Plaintiffs reserve the right to amend the above definitions or to propose subclasses in subsequent pleadings and/or motions for class certification.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

76.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Classes is easily ascertainable.

a.    Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiffs are informed and believe and, on that basis, allege that the total number of Class Members is in the hundreds of thousands of individuals. Membership in the Classes will be determined by analysis of Defendant's records.

b.    Commonality: The Representative Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1)    Whether Defendant breached a legal duty to Representative Plaintiffs and Class Members in the designing, marketing, selling, maintaining and/or providing of updated information regarding the Covered Products;

2)    Whether Defendant knew or should have known of the susceptibility of the Covered Products to a Data Wipe, and when it first knew or had reason to know thereof;

3)    Whether the Covered Products' design was reasonable, adequate and appropriate vis-a-vis the expected and intended usage of those products, in light of the standards recommended by industry experts;

4)    Whether Defendant designed the Covered Products and/or failed to warn Representative Plaintiffs and Class Members in a manner below industry standards, and whether these failures proximately led to the Data Wipe and/or loss of Stored Data;

5)    Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to product design;

6)    Whether Defendant adequately, promptly and accurately informed Representative Plaintiffs and Class Members that their Stored Data was subject to compromise and/or deletion;

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-19-
FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

7)   How and when Defendant actually learned of the Data Wipe;

8)   Whether Defendant failed to adequately respond to the Data Wipe, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages and/or additional damages to Representative Plaintiffs and Class Members;

9)   Whether Defendant has (since the event) adequately addressed and fixed the vulnerabilities which permitted the Data Wipe to occur in the first instance, such that consumers may again use the Covered Products with confidence;

10) Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to design, test, monitor and warn Representative Plaintiffs and Class Members of the dangers inherent in using its Covered Products;

11) Whether Representative Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct and, if so, what is necessary to redress the imminent and currently ongoing harm faced by Representative Plaintiffs, Class Members and the general public; and

12) Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.   Typicality: The Representative Plaintiffs' claims are typical of the claims of the Plaintiff Classes. Representative Plaintiffs and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein. The same event and conduct that gave rise to Representative Plaintiffs' claims are identical to those that give rise to the claims of every Class Member because Representative Plaintiffs and Class Members alike had their Stored Data compromised in the same way by the same conduct of Defendant. Representative Plaintiffs and Class Members face identical threats resulting from the resetting of their hard drives and/or access by cyber-criminals to the Stored Data maintained thereon.

d.   Adequacy of Representation: The Representative Plaintiffs in this class action are adequate representatives of each of the Plaintiff Classes in that the Representative Plaintiffs have the same interest in the litigation of

-20-
FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵗᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

this case as the Class Members, are committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Classes in their entirety. The Representative Plaintiffs anticipate no management difficulties in this litigation. Representative Plaintiffs and their counsel will fairly and adequately protect the interests of all Class Members.

e.   Superiority of Class Action: The damages suffered by individual Class Members are significant but may be small relative to the enormous expense of individual litigation by each member. This makes or may make it impractical for members of the Plaintiff Classes to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

77.   Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, such that it is impracticable to bring all Class Members before the Court.

78.   This class action is also appropriate for certification because Defendant has acted and/or has refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Classes in their entireties. Defendant's policies challenged herein apply to and affect Class Members uniformly and Representative Plaintiffs' challenge of these policies and conduct hinges on Defendant's conduct with respect to the Classes in their entireties, not on facts or law applicable only to the Representative Plaintiffs.

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

1      79.     Unless a Class-wide injunction is issued, Defendant's violations may continue and

2    Defendant may continue to act unlawfully as set forth in this Complaint.

3

4                          **COMMON FACTUAL ALLEGATIONS**

5    **Defendant's Unlawful Conduct**

6      80.     On June 23 of 2021, Western Digital Corporation announced an attack by hackers

7    on two of its Internet-connected devices, My Book Live and My Book Duo. This attack was

8    possible because of multiple vulnerabilities present in the devices. Defendant knew or should have

9    known about these vulnerabilities for years, yet did not act diligently to remedy the situation or

10   even to warn Representative Plaintiffs and/or Class Members of them. As explained above, the

11   result of this event is herein referred to as the "Data Wipe."

12     81.     One of the vulnerabilities present in the device systems allowed hackers to remotely

13   execute malicious code in the storage devices' operating system and then, consequently, to reset

14   the devices to factory settings without requiring a password. The practical effect of a factory reset

15   is the complete loss of all data previously stored on said device(s).

16     82.     As a result of the attack, all Covered Products that were connected to the internet

17   had their Stored Data remotely wiped clean and their users were unable to log in with their own

18   credentials. The data that was wiped ranged from personal photos and other personal information

19   to consumers' work product for their businesses, to financial information, etc. External hard drives

20   have the ability to store all types of data, which can include digital keys used to access digital

21   wallets and accounts such as cryptocurrency. Accordingly, countless Class Members not only lost

22   the data stored on the Covered products, but also lost access to additional data stored elsewhere,

23   the credentials for which they may have stored on the Covered Products.

24     83.     Such data can be extremely valuable. For example, a cryptocurrency wallet can

25   contain tens or hundreds of thousands of dollars-worth of cryptocurrency. But such wallets

26   typically require special credentials to access and, once lost, can oftentimes never be recovered.

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

1  Any Class Member who had such credentials stored in an affected device could lose access to that

2  wallet and its value forever.

3      84.    After the incident, Defendant presented to (at least some) affected users a data

4  recovery protocol, and an offer to trade-in their devices (if deemed, in Defendant's estimation, to

5  have been affected) for an upgrade. To take advantage of these offers, affected Covered Product

6  consumers would be required to contact Western Digital Corporations' Support center and be

7  issued a case number by no later than July 31, 2021, or they would not be eligible for this data

8  recovery effort under any circumstances. Furthermore, the device upgrade, where even applicable,

9  would only be available at a cost to Covered Product consumers.[7] Indeed, even in the instance

10 where an affected Covered Product consumer successfully navigated what was bound to be

11 circuitous path to Defendant's acquiescence to an upgrade or data recovery effort, the consumer

12 would be required to turn over his/her machine (i.e., evidence of the wrongdoing) to Defendant

13 (i.e., the wrongdoer). And, even then, there was no guarantee of success that Defendant could

14 recover the valuable Stored Data and little reason to assume Defendant would be returning the now

15 worthless (as a storage device) but priceless (as litigation evidence) machine to the consumer.

16     85.    Additionally, such data recovery operations traditionally have mixed rates of

17 success. Though, theoretically, some data might be recovered by doing so, it is highly probable

18 that a significant portion of the lost data would be gone forever, corrupted, etc. Moreover, even if

19 some data was eventually recovered in this process, the loss of access to the data for an extended

20 period would still represent a significant harm to Representative Plaintiffs and Class Members.

21     86.    The deletion procedure used by unknown actors was to perform a full factory reset

22 of the devices, wiping Representative Plaintiffs' and Class Members' Stored Data completely as

23 if the customers had done it themselves knowingly. Consistent with these realities, Defendant's

24 offer to provide a data recovery service and device trade-in would likely prove largely ineffectual

25 in reversing the deletion of Representative Plaintiffs' and Class Members' Stored Data.

26

27 [7] https://www.westerndigital.com/support/productsecurity/wdc-21008-recommended-security-measures-wd-mybooklive-wd-mybookliveduo (last accessed July 20, 2021)

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-23-
FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

87.     The Stored Data accessed and/or deleted from the Covered Products is all the more concerning because there is yet another extant flaw in their systems, in this instance with Defendant's My Cloud device systems. The vulnerability was identified in 2018 by a pair of hacking researchers searching for exploits in various technology systems.[8] After finding this vulnerability, the pair of researchers published (in February 2021) a free security "patch" for users, although the patch had to be re-added if and once the device was shut down.[9] Defendant never responded to the researchers' report about the vulnerability, and ignored questions about whether the flaw was ever addressed in the operating system (OS3) of these devices.[10] The flaw was purportedly eliminated in a subsequent version of the software (OS5), and yet, the new OS version prohibited many users' ability to access various third-party applications (i.e., that OS3 had theretofore supported).[11]

**Defendant's Disregard for Customer Data Security**

88.     Defendant allowed inherent flaws in the WD My Book Live and My Book Duo to remain within those systems and left Representative Plaintiffs and Class Members unprotected against a cyber-attack which could easily (and did, in this Data Wipe) erase all of their Stored Data.

89.     Defendant has a history of allowing inherent flaws in the Covered Products that were dangerous to customers' information, and yet, failed both to take action to protect customers' data and to adequately address and warn consumers of Defendant's resultant security concerns.

90.     Defendant admits that its My Book Live and My Book Duo product updates are no longer supported and have not been supported since 2015.

---

[8] https://krebsonsecurity.com/2021/07/another-0-day-looms-for-many-western-digital-users/ (last accessed July 20, 2021).

[9] Ibid. (last accessed July 20, 2021)

[10] Ibid. (last accessed July 20, 2021)

[11] Ibid. (last accessed July 20, 2021)

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

91.     Representative Plaintiffs and Class Members' choice to use hardware that was no longer being supported/updated by the company, especially when Defendant knew, at least since 2018, that the Covered Products had flaws inherent thereto, does not render the customers' loss of Stored Data due to the company's behavior acceptable.

92.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of designing, marketing, selling and providing updated and accurate information regarding the Covered Products such that the Stored Data of Representative Plaintiffs and Class Members was not left vulnerable to cyber-attack. Defendant was, at all times herein relevant, aware that Representative Plaintiffs and Class Members would store valuable, if not irreplaceable, information on the Covered products and that an attack on the integrity of that information could result in the incurrence of significant costs to Representative Plaintiffs and Class Members.

93.     The Data Wipe was the inevitable result of Defendant's inadequate approach to product design, inadequate continued testing and monitoring of the Covered Products and/or inadequate warnings to Representative Plaintiffs and Class Members of the dangers of the continued use of the Covered Products and, as such, Defendant could have prevented this Data Wipe. Defendant had the resources to prevent the events detailed herein but neglected to adequately invest in measures calculated to do so, despite the growing number of well-publicized cyber-crimes and despite knowledge that the Covered Products were vulnerable to attack.

94.     Had Defendant remedied these deficiencies and/or adequately warned consumers by adopting measures recommended by experts in the field, Defendant could have prevented the factory reset and/or, at minimum, the deletion of the Stored Data and resultant damages to Representative Plaintiffs and Class Members.

95.     Representative Plaintiffs and Class Members now face a completely unknown and very small likelihood of ever recovering their Stored Data, which may include all of the following: business information, work product, financial information, identification documents, personal files, pictures, and many other sensitive, important and/or irreplaceable files. Representative

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1  Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to

2  any future possibility of failure of Defendant's Covered Products.

3       96.     The injuries to Representative Plaintiffs and Class Members were directly and

4  proximately caused by Defendant's acts and omission detailed herein.

5       97.     Defendant owed a duty to Representative Plaintiffs and the Classes to design,

6  maintain and test the Covered Products to ensure that the Stored Data saved on those products

7  would be and would remain adequately secured and protected.

8       98.     Defendant owed a duty to Representative Plaintiffs and the Classes to implement

9  processes that would forecast and/or detect such an event as the Data Wipe that occurred here.

10       99.     Defendant owed a duty of care to Representative Plaintiffs and Class Members

11  because they were foreseeable and probable victims of the events detailed herein.

12

13  **Value of the Stored Data**

14       100.     At present, and in addition to the foregoing, Representative Plaintiffs and Class

15  Members are unaware as to whether their Stored Data was merely deleted, or if such information

16  has made its way into the hands of cyber-criminals. For obvious reasons, such uncertainty

17  represents grave concern for Representative Plaintiffs and Class Members. To date, Defendant has

18  not revealed the full extent of the reason/cause for/of the Data Wipe, nor unequivocally denied that

19  the information deleted is or will likely work its way into the possession of cyber-criminals.

20       101.     Should the information be in the hands of cyber-criminals, such an attack would

21  represent a major score for them. This kind of information is of great value to cyber-criminals and

22  the data involved in the Data Wipe may be used in a variety of sordid ways for criminals to exploit

23  Representative Plaintiffs and Class Members and to profit off their misfortune.

24       102.     Indeed, it is well known and the subject of many media reports that such personal

25  and/or commercial information is highly coveted and a frequent target of hackers, largely due to

26  the frequent public announcements of data breaches.

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

103.   Such Stored Data is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, social security numbers, and other stolen information on a variety of underground Internet websites.

104.   Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[12] For example, with the kinds of information involved in the Data Wipe (e.g., identifying information such as Social Security and driver's licenses numbers, passwords, etc.), identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[13] Should such information now be in the hands of cyber-criminals, these criminal activities have and will result in devastating financial and personal losses to Representative Plaintiffs and Class Members. Indeed, it is well known and the subject of many media reports that personal information is highly coveted and a frequent target of hackers; cyber-criminals can use it and trade the information on the cyber black-market for years.

105.   For example, it is believed that certain Personal and Medical Information compromised in the 2017 Experian Data Wipe was being used, now years later, by identity thieves to apply for COVID-19-related benefits in the State of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiffs and Class Members for the rest of their lives. They will need to remain constantly vigilant for identity theft.

106.   The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or

[12]   "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[13]   *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/. (last accessed July 28, 2021).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

1    in conjunction with any other information, to identify a specific person," including, among other

2    things, "[n]ame, Social Security number, date of birth, official State or government issued driver's

3    license or identification number, alien registration number, government passport number,

4    employer or taxpayer identification number."

5        107.    Identity thieves can use Stored Data, such as that of Representative Plaintiffs and

6    Class Members, to perpetrate a variety of crimes that harm victims. For instance, identity thieves

7    may commit various types of government fraud such as: immigration fraud; obtaining a driver's

8    license or identification card in the victim's name but with another's picture; using the victim's

9    information to obtain government benefits; or filing a fraudulent tax return using the victim's

10   information to obtain a fraudulent refund.

11       108.    What's more, legitimate organizations and the criminal underground alike

12   recognize the value in personal information contained in a merchant's data systems; otherwise,

13   they would not aggressively seek or pay for it. For example, in "one of 2013's largest breaches . .

14   . not only did hackers compromise the [card holder data] of three million patients, they also took

15   registration data [containing personal information] from 38 million users." (See, Verizon 2014 PCI

16   Compliance      Report,      available      at:      https://www.centurybizsolutions.net/wp-

17   content/uploads/2014/09/PCI-Compliance-report-2014.pdf, at 54).

18       109.    The ramifications of Defendant's failure to design Covered Products that would

19   keep secure Representative Plaintiffs' and Class Members' Stored Data are long lasting and severe.

20   Once such personal and/or commercial information is stolen, particularly Social Security numbers,

21   fraudulent use of that information and damage to victims may continue for years.

22       110.    As such, the personal information of individuals remains of high value to criminals,

23   as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web

24   pricing for stolen identity credentials. For example, personal information can be sold at a price

25   ranging from $40 to $200, and bank details have a price range of $50 to $200.[14] Experian reports

---

[14] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct.
16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-
dark-web-how-much-it-costs/ (last accessed July 28, 2021).

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[15] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[16]

111.   Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[17]

112.   Indeed, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

113.   Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

---

[15]   *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed July 28, 2021).

[16]   *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed July 28, 2021).

[17]   Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed July 28, 2021).

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

1   new number very quickly to the old number, so all of that old bad information is quickly inherited

2   into the new Social Security number."[18]

3       114.    Based on the foregoing, the information compromised in the Data Wipe is

4   significantly more valuable than the loss of, for example, credit card information in a retailer data

5   breach, because, there, victims can cancel or close credit and debit card accounts. Here, in many

6   instances, Representative Plaintiffs and Class Members do not know the full extent of the Stored

7   Data lost since, again, many of them did not maintain a reliable and/or complete inventory of the

8   Stored Data placed in the Covered Products.

9       115.    Should such personal and/or commercial information either now or someday fall

10  into the hands of cyber-criminals, there may be time lags between when harm occurs, when it is

11  discovered, and when it is used. According to the U.S. Government Accountability Office

12  ("GAO"), which conducted a study regarding cyber-crimes:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from Data Breaches cannot necessarily rule out all future harm.[19]

17      116.    As such, Representative Plaintiffs and Class Members have and will continue to be

18  damaged, in that they will continue to worry about the use of their private information by cyber-

19  criminals well into the future. This concern, coupled with the remedial efforts they must therefore

20  now take, will understandably plague and damage them for years to come.

21      117.    If cyber-criminals managed to access financial information, health insurance

22  information, and other personally sensitive data of Representative Plaintiffs and Class Members

---

[18]  Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed July 28, 2021).

[19]  *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at*: http://www.gao.gov/new.items/d07737.pdf (last accessed July 28, 2021).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

FIRST AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

1   in this instance there would virtually no limit to the amount of fraud to which Defendant could

2   expose the Representative Plaintiffs and Class Members.

3

**FIRST CLAIM FOR RELIEF**
4   **Violation of the Song-Beverly Consumer Warranty Act**
**(California Civil Code §1792, *et seq.*)**
5   **(California Subclass Only)**

6       118.   Each and every allegation of the preceding paragraphs is incorporated in this cause

7   of action with the same force and effect as though fully set forth herein.

8       119.   Defendant violated the Song-Beverly Consumer Warranty Act (hereinafter the

9   "SBA") by, among other things, violating the implied warranties of merchantability by knowingly

10  selling Covered Products that were unsuitable for their expected and intended use and were,

11  therefore, not fit for the ordinary purpose for which the goods were intended to be sold.

12      120.   Plaintiff and Class Members are "buyers," as those terms are defined and/or used

13  in the SBA of the Covered Products.

14      121.   Defendant is a "manufacturer" and/or "distributor," as those terms are defined

15  and/or used in the SBA of the Covered Products.

16      122.   Each Covered Product was accompanied by an implied warranty that they were

17  merchantable pursuant to California Civil Code §1792.

18      123.   The Covered Products were not fit for the ordinary purpose for which such goods

19  are typically used and were not of the same quality as those generally acceptable in the trade

20  because they maintained a vulnerability, as detailed in this Complaint, that permitted a remote

21  factory reset and/or access by cyber-criminals to the Stored Data maintained thereon.

22      124.   The Covered Products did not measure up to the promises or facts stated in

23  Defendant's marketing and/or on the Covered Products' packaging, namely that they were and

24  would operate as safe and reliable storage devices that could be used without fear of the data

25  thereon being deleted and/or accessed by third parties.

26      125.   Defendant's misconduct was a substantial factor in causing, and did proximately

27  cause, Representative Plaintiffs' and Class Members' injury and economic loss.

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

126.     Representative Plaintiffs and Class Members suffered harm, damages and economic loss, and Representative Plaintiffs and Class Members will continue to suffer such harm, damages and economic loss in the future. Additionally, Representative Plaintiffs and Class Members are entitled to recover all incidental and consequential damages pursuant to California Civil Code §§1794, *et seq.* and Commercial Code §§2714 and 2715, *et seq.*

127.     Defendant's conduct was gross, reckless, and in bad faith and/or occurred with willful disregard of the rights and interest of Representative Plaintiffs and Class Members. Defendant acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Representative Plaintiffs and Class Members, so as to constitute oppression, fraud and/or malice under the law.

128.     Representative Plaintiffs and Class Members are entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses and actual attorneys' fees reasonably incurred in connection with the commencement and prosecution of this action, along with prejudgment interest, pursuant to Civil Code §3287.

### SECOND CLAIM FOR RELIEF
### Negligence/Failure to Warn

129.     Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

130.     At all times herein relevant, Defendant owed a duty of care to Representative Plaintiffs and Class Members to act with reasonable care so as not to put their Stored Data in jeopardy.

131.     Defendant breached its general duty of care to Representative Plaintiffs and Class Members in, but not necessarily limited to, failing to adequately warn Representative Plaintiffs and Class Members of the dangers of Defendant's Covered Products, including the legitimate threat of cyber-attack, and in failing to comply with applicable industry standards, and state and federal laws, rules, regulations and standards.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1    132.    Representative Plaintiffs are informed and believe and, based thereon, allege that

2  Defendant's breaches of its respective duties of care were substantial factors, as set forth above, in

3  allowing the Data Wipe to occur and in causing Representative Plaintiffs' and Class Members'

4  injuries and economic losses.

5    133.    As a direct and proximate result of the above-described willful and unlawful

6  conduct of Defendant, Representative Plaintiffs and Class Members sustained damages, as set

7  forth in this Complaint.

8

9                    **THIRD CLAIM FOR RELIEF**
      **Breach of the Implied Covenant of Good Faith and Fair Dealing**

10    134.    Each and every allegation of the preceding paragraphs is incorporated in this cause

11  of action with the same force and effect as though fully set forth herein.

12    135.    Every contract in the State of California has an implied covenant of good faith

13  and fair dealing. This implied covenant is an independent duty and may be breached even when

14  there is no breach of the contract's express terms.

15    136.    Representative Plaintiffs and Class Members have complied with and performed

16  all conditions of their contracts.

17    137.    Defendant breached the implied covenant of good faith and fair dealing by failing

18  to inform Representative Plaintiffs and Class Members of the defects and/or vulnerabilities

19  inherent in the Covered Products and failing to properly repair and/or provide a patch for

20  those defects and/or vulnerabilities.

21    138.    Defendant acted in bad faith and/or with malicious motive in denying

22  Representative Plaintiffs and Class Members the full benefit of their bargains as originally

23  intended by the parties, thereby causing them injury in an amount to be determined at trial.

24

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

**FOURTH CLAIM FOR RELIEF**
**Unfair Business Practices**
**(Cal. Bus. & Prof. Code, §17200, *et seq*.)**
**(California Subclass Only)**

139.    Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

140.    Representative Plaintiffs and members of the California Subclass further bring this cause of action, seeking equitable and statutory relief to stop the misconduct of Defendant, as complained of herein.

141.    Defendant has engaged in unfair competition within the meaning of California Business & Professions Code §§17200, *et seq.*, because Defendant's conduct is unlawful, unfair and fraudulent, as herein alleged.

142.    Representative Plaintiffs, the members of the California Subclass, and Defendant are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

143.    The UCL prohibits any unlawful, unfair or fraudulent business practices or acts.

144.    Defendant's sub-standard design of the Covered Products, failure to warn of the grave dangers of continued use of the Covered Products, failure to provide a "patch" for the defects therein, failure to recall the Covered Products, and/or Defendant's deceptive misrepresentations, concealments and suppressions of material fact, as alleged herein, all constitute unlawful and/or fraudulent business practices, as set forth in California Business & Professions Code §§17200-17208, including violating the UCL's unlawful, unfair as well as fraudulent prongs. Specifically, Defendant conducted business activities for years while failing to comply with the legal mandates cited herein.

145.    Defendant knew or should have known that its Covered Products were inadequate to safeguard the Stored Data of Representative Plaintiffs and members of the California Subclass, deter hackers, and block against a breach, and that the risk of a Data Wipe was highly likely.

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

146.    In engaging in these unlawful business practices, Defendant has enjoyed an advantage over its competition and a resultant disadvantage to the public and members of the California Subclass.

147.    Defendant's knowing failure to adopt policies in accordance with and/or adhere to these laws, all of which are binding upon and burdensome to Defendant's competitors, engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice, as set forth in California Business & Professions Code §§17200-17208.

148.    Defendant has clearly established a policy of accepting a certain amount of collateral damage, as represented by the injuries and damages to Representative Plaintiffs and members of the California Subclass herein alleged, as incidental to its business operations, rather than accept the alternative costs of full compliance with fair, lawful and honest business practices ordinarily borne by responsible competitors of Defendant and as set forth in legislation and the judicial record.

149.    The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Bus. & Prof. Code § 17205.

150.    Representative Plaintiffs and members of the California Subclass request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Representative Plaintiffs and members of the California Subclass any money Defendant acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12ᵀᴴ STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL.: (510) 891-9800

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment

151.   Each and every allegation of the preceding paragraphs is incorporated in this cause of action with the same force and effect as though fully set forth herein.

152.   By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Representative Plaintiffs and Class Members.

153.   Defendant, prior to and at the time Representative Plaintiffs and Class Members decided to purchase the Covered Products, knew and had knowledge and information that the Covered Products suffered from the aforementioned defects and vulnerabilities.

154.   Defendant was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to the Covered Products' defects and vulnerabilities before deciding whether or not to purchase and/or continuing to use them. Defendant was also aware that, if the Covered Products' defects and vulnerabilities were disclosed, it would negatively affect the demand Representative Plaintiffs and Class Members had to purchase the Covered Products.

155.   Defendant failed to disclose facts pertaining to the Covered Products' defects and vulnerabilities before Representative Plaintiffs and Class Members made their decisions to purchase and/or continue using them. Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Representative Plaintiffs and Class Members the ability to make a rational and informed purchasing decisions and took undue advantage of Representative Plaintiffs and Class Members.

156.   Defendant was unjustly enriched at the expense of Representative Plaintiffs and Class Members. Defendant received profits, benefits, and compensation, in part, at the expense of Representative Plaintiffs and Class Members who purchased the Covered Products. By contrast, Representative Plaintiffs and Class Members did not receive the benefit of their bargain because they paid for products that did not satisfy the purposes for which they bought them.

157.   Since Defendant's profits, benefits, and other compensation were obtained by improper means, Defendant is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from the Covered Products.

158.   Representative Plaintiffs and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Representative Plaintiffs and Class Members may seek restitution.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Representative Plaintiffs, on behalf of themselves and each member of the proposed National Class and proposed California Subclass, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1.     That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed Classes and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Plaintiffs as Class Representatives, and Representative Plaintiffs' counsel as Class Counsel;

2.     For an award of damages, including actual, nominal, special and consequential damages, as allowed by law in an amount to be determined;

3.     That the Court enjoin Defendant, ordering it to cease and desist from unlawful activities in further violation of California Business and Professions Code §17200, *et seq*.;

4.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein, and from refusing to issue prompt, complete, any accurate disclosures to Representative Plaintiffs and Class Members;

5.     For injunctive relief and other equitable relief as requested by Representative Plaintiffs, as is necessary to protect the interests of Representative Plaintiffs and Class Members;

6.     For prejudgment interest on all amounts awarded, at the prevailing legal rate;

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

1   7.   For any other available penalties for each illegal or fraudulent business act or

2   practice;

3   8.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

4   9.   For all other Orders, findings, and determinations identified and sought in this

5   Complaint.

6

7   **<u>JURY DEMAND</u>**

8   Representative Plaintiffs, individually and on behalf of the Plaintiff Classes, hereby

9   demand a trial by jury for all issues triable by jury.

10

11   Dated: June 27, 2022                              **COLE & VAN NOTE**

12

13                                        By: _____

14                                             Cody A, Bolce, Esq.
                                              Attorneys for Representative Plaintiff
15                                             and the Plaintiff Class(es)

16

17

18

19

20

21

22

23

24

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 1725
OAKLAND, CA 94607
TEL: (510) 891-9800

-38-
FIRST AMENDED COMPLAINT FOR DAMAGES,
INJUNCTIVE AND EQUITABLE RELIEF
CASE NO. 5:21-CV-06074-EJD